LEE v. STATE.*

(In Banc.  Dec. 22, 1924.   Suggestion of error overruled Jan. 12, 1925.)

[102 So. 296.  No. 24146.]

1. HOMICIDE.  *Evidence of commission of felony by accused in prose-
   cution for killing officer attempting to arrest parties committing
   it, admissible.*

   In the trial of a person for murder for the killing of an officer
   attempting to arrest the parties who had committed a robbery,
   evidence of the commission of such felony by the defendant and
   his companions is admissible, where it tends to show that de-
   fendant was present at the time and place of the killing, and
   tends to establish the identity of the defendant as a participant
   in the killing, and it is also admissible as tending to show motive
   for resisting arrest, and that the defendant and his companions
   were confederated together for the felonious purpose of robbery
   and resistance to arrest, and that in furtherance of this com-
   mon design the officer was killed by one of the conspirators, in
   which case the killing of the deceased, by whichever of them
   done, would be the act of each and all of them.

2. CRIMINAL LAW.  *Error in admission of portions of testimony of par-
   ticular witness not reached by motion to strike whole testimony,
   parts of which competent.*

   Error in admitting certain portions of the testimony of a particular
   witness is not reached by a motion to strike out the whole of the
   testimony of such witness, other parts of which are perfectly
   material and competent.

3. CRIMINAL LAW. *On request court must determine, in jury's absence, whether offered confession voluntary; determination of whether confession voluntary within exclusive province of court even on conflicting evidence.*

To render the confession of a defendant in a criminal case admissible as evidence the court must, if requested by him, determine outside of the hearing of the jury whether such confession was made voluntarily; and it is within the exclusive province of the court to determine this, and not a question for the jury, even though the evidence on such point be conflicting.

4. CRIMINAL LAW. *Rule stated as to when court should permit confession to go to jury.*

If the court be satisfied, after hearing all the testimony pertinent to the inquiry, that such confession is free and voluntary, it should go to the jury; but, if there is a reasonable doubt against it being free and voluntary, it should be excluded from the jury.

5. CRIMINAL LAW. *Confession of accused after determination, necessitated by evidence of competency in court's requested preliminary investigation, admissible.*

When the court, at the request of the defendant, conducted a preliminary investigation as to the competency of a confession, out of the presence and hearing of the jury, and, upon the testimony before the court, it is manifest that no other conclusion could have been reached than that the confession was free and voluntary, such confession was properly admitted in evidence.

6. WITNESSES. *Statements in court, to be impeached by unsworn statements outside of court, must embody relevant substantive fact.*

While the unsworn statement of a witness made out of court may be used to contradict the sworn statement in court, whether the statement sought to be contradicted is made by the witness on his direct examination or on his cross-examination, in either case the statement in court must be one embodying a fact substantive in its nature and relevant to the issue made in the case.

7. WITNESSES. *Testimony establishing defendant's alibi may be impeached by prior contradictory unsworn statement of witness.*

In a prosecution for murder, the sworn statement of a witness that the defendant was at his home at the time the homicide was committed, and that he received a wound in the foot from a pistol accidentally discharged by him while at his home, may be impeached by an unsworn statement of the witness that the defendant did not come to his home on the night of the killing

until several hours thereafter, and that when he reached home he was wounded in the foot.

8. HOMICIDE. *Evidence held sufficient to sustain conviction for murder in carrying out conspiracy to commit another felony.*

Evidence discussed, and *held*, that it was sufficient to warrant the jury in finding that the defendant was present at the time and place of the killing, and that he and his companions were confederated together for the unlawful and felonious purpose of robbery and resistance to arrest, the natural and probable consequence of which involved the contingency of taking human life, and that in furtherance of this common design the officer was killed by one of the conspirators, in which case the killing of the deceased, by whichever of them actually done, was the act of each and all of them.

ANDERSON, J., dissenting.

---

*Headnotes 1. Homicide, 30 C. J., section 444; 2. Criminal Law, 16 C. J., section 2209; 3. Criminal Law, 16 C. J., sections 1513, 2287; 4. Criminal Law, 16 C. J., sections 1512, 2287; 5. Criminal Law, 16 C. J., section 1512; 6. Witnesses, 40 Cyc., p. 2699; 7. Witnesses, 40 Cyc., p. 2687; 8. Homicide, 30 C. J., section 557.

APPEAL from circuit court of Hinds county.

HON. W. H. POTTER, Judge.

Eddie Lee, alias Eddie Lee Lofton, was convicted of murder, and he appeals. Affirmed.

*Geo. L. Teat*, for appellant.

I propose to discuss only two propositions in this brief, the first proposition being: That the lower court grievously erred in permitting the state to do what it purported to call impeach the two principal witnesses of the defendant, to-wit, his mother Martha Ann McMullen and his step-brother Mose McMullen on what was clearly collateral, immaterial, irrelevant and incompetent matter. The second proposition is that the trial court erred in permitting the state to introduce

evidence, to the effect that the defendant committed two robberies en route from Vicksburg to Edwards on the evening of the alleged homicide, the objection being that the full details of the alleged robberies were given in evidence although the defendant was on trial for murder and not for robbery.

The foundation and bed-rock for the proposition of which this brief stands, was laid by Judge WHITFIELD speaking for this court in the case of *Napoleon Williams* v. *State,* 73 Miss. 823. This case is a very much more favorable case for the state than the case at bar, because the time and place and nature of the statement was much more closely related to the alleged crime, than are the contradicted facts here complained of. *Garner* v. *State,* 76 Miss. 515; *Dunk* v. *State,* 84 Miss. 452; *Davis* v. *State,* 85 Miss. 416; *Bell* v. *State,* 38 So. 796. It is impossible to conceive of a more highly prejudicial abuse of the rule of law prohibiting the impeachment and contradiction of witnesses on collateral matters as was done in the instant case. As was said in several of the foregoing cases, the mere bare statement of this testimony demonstrates its utter incompetency, irrelevancy and inadmissibility, unless the court here refuses to follow the long settled and well-recognized rule of evidence which forbids a witness to be contradicted and impeached upon matters collateral to the issue in the case.

On the second proposition as to whether the court committed error in permitting a full trial of the defendant and complete detail of testimony on the two robberies, testified to by the witnesses for the state, but which robberies were not included in the indictment upon which he was being tried, I shall be very brief. *Whitlock* v. *State,* 6 So. 237.

*S. C. Broom,* for appellant.

In discussing the first proposition we desire to call the court's attention to our motion made at the very

beginning of the trial and before any evidence had been introduced on behalf of the state to strike from the indictment the words ''Alias Lofton.'' The court over-ruled this motion. We knew then and it is now affirm-atively shown by the record, and is uncontradicted that there was a negro named Eddie Lee Lofton living in the city of Jackson. We believed that a mistake had been made and we knew that whenever the word ''Alias'' is used in connection with a man's name that it registers an impression on the mind of those who were present that this man is now under an assumed name or has at sometimes gone under an assumed name and the inevitable conclusion is that there can be no excuse or reason for going under an assumed name except for the purpose of avoiding some legal penalty. The chief of police should never have been permitted to testify as to this hearsay statement of the co-defendant Lester Hurd. Under no theory of the law is the confession of a co-defendant admissible in evidence against a co-de-fendant.

The second proposition constitutes fatal and revers-ible error. It was in keeping with the general scheme of the prosecution to overwhelm the defendant with suspicion, by *innuendo* as in the first proposition, and by direct proof as stated in the second proposition where they went into great detail and proved him guilty of the crime of robbery of a negro in Warren county several hours before the marshal was killed. It will be observed that an effort was made to introduce an alleged confession of the defendant. The chief of police had sworn that he had made a statement to him. It will be observed that the court was in error as to the law in such cases. *Ellis* v. *State,* 65 Miss. 44; *Hunter* v. *State,* 74 Miss. 515; *Draughn* v. *State,* 76 Miss. 574; *Johnson* v. *State,* 107 Miss. 196. It will be seen that the learned court below was in error as to the law. It will be seen from these authorities that the competency of

the evidence and its admissibility is a question of law to be determined by the court. Having determined its competency and admissibility, it is then for the jury to say whether the confession thus voluntarily made is true or untrue. The state utterly failed to make out a case in chief.

The motion was predicated upon this proposition. It is of course, immaterial whether the proof shows him to be a principal or accessory before the fact. But in either case it must be shown: First, that he fired the fatal shot which resulted in the death of Mr. Lancaster; or, second, that there was a conspiracy to kill if necessary; or, third, that he was present for the purpose of aiding and abetting; or, fourth, did aid and abet; or, fifth, did perform some overt act, and; sixth, if he was an accessory before the fact it must first be shown who the principal was that did actually kill Lancaster. *Harper* v. *State,* 83 Miss. 402; *Osborne* v. *State,* 99 Miss. 410; 9 Am. & Eng. Law 575; 2 Thompson, Trials, sec. 2216.

The prosecution proceeded to make out a case in rebuttal that could not be made out in chief; and, brought on witnesses, among others the chief of police, and proceeded to fill in where necessary and bolster up their case. Defendant then and there promptly objected, which objection was overruled. *Davis* v. *State,* 85 Miss. 416; *Williams* v. *State,* 73 Miss. 820.

*II. M. Bryan,* assistant attorney-general, for the state.

The proof was amply sufficient to sustain conviction. We have gone into great detail and have possibly encroached upon the patience of the court in setting out what we deem to be the salient portions of the testimony in this case, because as we view the record, the question of sufficiency of proof is in reality the only serious matter to be considered. It is our contention that whether appellant actually fired the shot that resulted in the

death of Ollie Lancaster, or whether he was a part of a conspiracy, engaged in the commission of unlawful acts amounting to a felony, and was present at the homicide with his companions in crime, the result is the same.

The overwhelming accountability for the presence of appellant at the time of the homicide as adduced by the state was not shaken by the defense in this case and it is immaterial whether the jury believed that. the appellant actually fired the gun,—if he was present, aiding, abet-ting, encouraging or participating in the homicide, he occupied the status of a principal. The authorities even go further and lay down the general rule that: "All who join in the common design to kill, whether in sudden emergency, or pursuant to a conspiracy are liable for the acts of each of their accomplices and furtherance thereof. This liability attaches whether the acts were specifically contemplated or not, and although defendant did not know when or how the homicide was to be committed, or what particular individual was to do the killing, or, although defendant was under the impression that the person whose death he was endeavoring to bring about was a different individual from the one actually killed. The accomplices are so liable, although the conspirator who actually committed the homicide cannot be identified." 29 C. J. 1072; *Peden* v. *State,* 61 Miss. 267.

There is nothing in this record which could have led any juror to believe that the appellant withdrew from the common design to rob and resist arrest. One may escape responsibility for a homicide committed by a confederate in pursuance of the common design, if, before it is committed, he withdraws entirely from the undertaking and such fact is communicated to his associates under such circumstances as would permit them to take the same action. The rule is clearly expressed in 29 C. J. 1076. It cannot be denied that Ollie Lancaster was at a place where he had a right to be. He had the authority of law back of him to arrest the three robbers, who had been previously described to him, on sight. *White* v.

*State,* 70 Miss. 253; *Bridges* v. *State,* 20 So. 348; *Israel* v. *State* (Tex. Crim.), 230 S. W. 984, 15 A. L. R. 453; *Tolbert* v. *State,* 71 Miss. 179, 14 So. 426, 42 Am. St. Rep. 452. While it is true that the instant case differs somewhat in its facts from the Tolbert case in that appellant had not been previously convicted and was not an escaped convict, yet the same rule applies because of the clearly established antecedent robbery. *Douglas* v. *State,* 44 So. 817; *McCoy* v. *State,* 91 Miss. 257, 44 So. 814; *Sullivan* v. *State,* 85 Miss. 149, 37 So. 1006; *Jones* v. *State,* 70 Miss. 401, 12 So. 444; *Simmons* v. *State,* 51 Miss. 243; *Dean* v. *State,* 85 Miss. 40, 37 So. 501.

The court did not err in admitting testimony showing the robbery by appellant and his companions immediately prior to the homicide. It is a well-known rule of evidence that testimony showing other crimes should be admitted for the purpose of showing motive and full identification. Wharton's Criminal Evidence, 1736; *People* v. *Pool,* 27 Cal. 572; 3 Greenleaf's Ev., sec. 13; 1 Bish. Cr. Law, secs. 253 to 257; *Fowler* v. *Padget,* 7 Term R. 514; *State* v. *Williams,* 28 Nev. —, 82 Pac. 353; *State* v. *Morgan,* 22 Utah 162, 61 Pac. 527; *White* v. *State,* 70 Miss. 253, 110 So. 632; *State* v. *Grant,* 79 Mo. 113, 40 Am. Rep. 218; *People* v. *Wilson,* 141 N. Y. 185, 36 N. E. 230; *Miller* v. *State,* 32 Tex. Crim. Rep. 319, 20 S. W. 1103; *Keel* v. *State* (Miss.), 97 So. 521.

The court did not err in admitting testimony showing presence and actions of appellant north of Vicksburg on the afternoon preceding the homicide. The court will note from the record that there was no evidence introduced on behalf of the state in the presentation of its case in chief, having to do with the presence of appellant north of Vicksburg on Friday afternoon preceding the killing. It was after the defendant sought to show that he had never been in Vicksburg in his life and spent most of Friday at work in Jackson, that the state introduced this evidence in rebuttal. The fact that the

testimony showed the presence of pistols in the hands
of appellant and his companions at this point, was
incidental to the inquiry and was properly within its
scope.   The court will observe by an examination of the
record that after the defendant had sought to show that
he was at home on the afternoon preceding the killing
and therefore, would have led the jury to believe that
he was not and could not have been on the A. & V. train
Saturday night, the state was put to the necessity of
showing his presence elsewhere.   As the authorities
agree, equally essential as the proof of the *corpus
delicti* in every crime, is the identification of the accused
as the guilty agent.   The general rule is that personal
identification can be shown through any means by which
the individuality sought to be established can be differ-
entiated from that of every other individuality.   Whar-
ton's Criminal Evidence, 1783.   Not only was the tes-
timony competent in order to establish identification
but, as stated, for the purpose of combating their alibi.
16 C. J. 588, 595, and 600.

The confession, or statement of appellant was prop-
erly admitted.   We respectfully submit that although
the statement of the law as made by the court might
possibly be erroneous, the right result was reached by
virtue of the fact that in the absence of the jury, the
court very carefully examined the witnesses and found
that the statement of appellant was voluntarily made
and therefore, competent.   The point is, whatever idea
the court may have had as to the function of the jury
in dealing with the confession, no prejudice to defend-
ant's rights resulted because the very letter of the law
as announced in the Ellis case was carried out and the
examination touching its competency held in the absence
of the jury.   We submit at this point, that the statement
or confession of appellant was voluntarily made and not
under such circumstances as would render it inadmis-
sible; that the court did not err in holding it competent.
137 Miss.—22.

*Ellis* v. *State,* 65 Miss. 44; *Slave* v. *State,* 3 How. (Miss.), 433; *Penden* v. *State,* 61 Miss. 267; *Dunmore* v. *State,* 86 Miss. 788.

The court did not err in permitting John Simmons, state witness, to detail conversations had between Martha Ann McMullen, Mose McMullen and himself in the kitchen of appellant's house on the afternoon of his arrest. We agree with counsel that the holding of this court in *Williams* v. *State,* 73 Miss. 820, is sound and that the court laid down the proper test to be used for the purpose of determining what evidence introduced in contradiction of a witness is admissible. But, in the case at bar, the very presence of the accused before and since the homicide was put in issue as well as how he came to receive the pistol wound in his foot. We submit that the facts as revealed in the cases cited by Justice WHITFIELD in his opinion, are not similar to those of the instant case. Nor, are the facts of those cases cited by counsel in their brief, which are, *Garner* v. *State,* 76 Miss. 515; *Dunk* v. *State,* 84 Miss. 452; *Davis* v. *State,* 85 Miss. 416; *Bell* v. *State,* 38 So. 796.

It is stated in 40 Cyc. 2563, that there are but four modes of impeaching the credit of a witness: "(1) By cross-examination; (2) By proving previous contradictory statements or acts; (3) By producing the record of his conviction of some infamous crime; (4) By adducing general evidence tending to show that he is unworthy of belief on his oath." 40 Cyc. 2572; 28 R. C. L. 633; *State* v. *Mulhall,* 199 Mo. 202, 97 S. W. 583; 7 L. R. A. (N. S.) 630.

The court did not err in striking the words "Alias Eddie Lee Lofton" from the indictment.

*S. C. Broom,* in reply, for appellant.

We complain at the conviction and ask a reversal of this case because the evidence as a whole was insufficient to warrant a conviction and because the prosecution

failed utterly to make out a case against the appellant even though all of the testimony admitted was properly admitted, and even though every syllable and sentence of the testimony introduced on behalf of the prosecution was accepted as true; and, all of the testimony introduced on behalf of the appellant was disregarded. But, as a matter of fact, the trial court committed grievous and reversible error in admitting details of other distinct felonies; the court committed grievous and reversible error in admitting so-called rebuttal testimony about irrelevant, immaterial and collateral matters. *Crawford* v. *State,* 97 So. 534.

Argued orally by *S. C. Broom,* for appellant, and by *Harry M. Bryan,* for appellee.

COOK, J., delivered the opinion of the court.

The appellant, Eddie Lee, was convicted in the circuit court of the Second district of Hinds county on a charge of murder, and was sentenced to be hanged, and from this conviction and sentence he prosecuted this appeal.

This is a companion case to that of *Lester Hurd* v. *State,* 102 So. 293, which was decided by this court on December 15th, and the testimony is, in part, the same. Roosevelt Richardson and Walter Johnson were witnesses in both cases, and their testimony is practically the same in both cases, and reference is made to the opinion in the Hurd case for a statement of the substance of the testimony of these two witnesses. The additional material facts testified to by these witnesses in the present case were that they both positively identified the appellant as being one of the party of three men who robbed the said witnesses on the train near Edwards; that the appellant was at that time armed with an automatic pistol; and that, at the point of his pistol, he made them leave the train at Edwards; and that he was aboard this train when it pulled out through Edwards.

J. M. Moore was also a witness in both cases, and his testimony in both cases is the same, and the substance thereof will be found set out in the opinion in the Hurd case.

Will Hamilton testified that he followed Moore down the south side of the train; that when the shooting started on the north side of the train, and some distance in front of him, he came forward and crossed over the train to where Lancaster was; that he then met Lancaster, and was told by him that the parties they were after were in the car just ahead of them; that they went forward and stepped or jumped upon the car, the witness being just slightly in advance of Lancaster; that just as he straightened up on the car the parties in the car again began shooting, two of the shots taking effect in the witness; that he could only see the form or bulk of two men doing the shooting; and that, if there were others in the car, he could not see them in the dark. He further testified that he did not recognize the men in the car, and could not tell whether they were negroes or white men, and did not know when Lancaster was killed; that as soon as he, Hamilton, was shot he crossed back to the south side of the train where Moore was; and that Moore was then shooting at some one running away from the train.

John Simmons, the chief of police of the city of Jackson, testified that he arrested the appellant at the home of his mother in the city of Jackson on Sunday afternoon following the killing of Lancaster on Saturday night; that when he found the appellant he was in bed, claiming to be sick; that when he made him get out of bed he discovered that there was a wound in his foot which appeared to be a bullet wound; that there was also a hole through his shoe which in position corresponded with the wound in his foot; that appellant stated that he shot his foot while cleaning his pistol the evening before, and that he was sitting in a swing on

the front gallery of his home at the time he wounded
himself; and that at the time of the arrest he secured
from the appellant's home an automatic pistol which
he claimed belonged to his mother.

The witness was then asked a question concerning a
statement or confession made to him by appellant after
his arrest, and as to whether the statement was free
and voluntary. An objection was interposed on the
ground that the question as to whether the statement
was free and voluntary should be determined by the
court. The court thereupon stated: "If it is uncon-
tradicted, it is a question for the court. If it is a ques-
tion in dispute, it is a question of fact for the jury."
Thereupon the jury was retired, and the court examined
the witness upon the point. He testified that there was
no hope or promise of reward held out to appellant;
no duress or any kind of force used to coerce him, and
that no promise was made to him that if he would make
a statement or confession it would be to his advantage,
but, on the contrary, that he told the appellant "all the
way through that anything he said would be used
against him." At the conclusion of this examination
the appellant renewed his objection, but the objection
was overruled, the court stating: "The court's view is
that, if the state's testimony shows it was voluntary,
and the defendant's testimony refutes that, that would
raise a question for the jury to determine whether that
statement was competent." The witness then repeated
before the jury his testimony to the effect that the
statement made to him by the defendant was free and
voluntary, and he testified that the appellant told him,
in the presence of C. C. Gilmore, the jailer, that on the
night of the killing he, the appellant, and Clarence and
Lester Hurd were coming from Vicksburg on a freight
train; that they robbed two negroes on the train near
Edwards; that they came on the train to Bolton; that
when the train reached Bolton it went on a side track,

and then some white men came in and told them to throw up their hands and consider themselves under arrest; that when they did that Lester Hurd and Clarence Hurd commenced shooting; that he, the appellant, had an automatic pistol, but did not shoot; that he threw up his hands and ran, and was shot in the foot when he was running; that he came on around east of Bolton and caught the same train and rode to a tank near Jackson, where he got off the train and went to his home.

The jailer, Gilmore, testified that he was present when the appellant made this statement to the chief of police; that there was no offer of reward or inducement of any kind made to him to induce him to make the statement, and that no threat or intimidation of any kind was used toward the appellant to induce the statement, and that he stated that he was in company with Clarence and Lester Hurd at the time of the shooting; that he, Gilmore, did not hear or remember the entire conversation, but that he heard him state that when the shooting began he threw up his hands and ran, and was then shot.

With the testimony of this witness the state closed its case, and thereupon the appellant moved the court "to exclude the evidence offered by the state and direct a verdict for the defendant, because the alleged confessions were not shown beyond a reasonable doubt to have been free and voluntary; and for the further reason that they fail to show who actually committed the crime with which the defendant is charged; and for the further reason that, if the alleged confessions were true and properly admissible as evidence, they fail to connect the defendant with the crime charged in the indictment, either as principal or as accessory before the fact; and for the further reason that, if the alleged confession proves anything, it proves that he was an accessory after the fact, and as such can't be convicted on the indictment charging him with murder."

In passing on this motion the court said:

"On the question as to whether the confession was voluntary, according to the proof, I think it is shown by the testimony of these witnesses beyond any question that the admissions made by the defendant were voluntary; it is certainly within the rule laid down by any authority I know anything about.

"On the question of the sufficiency of the testimony to justify the jury in finding the defendant guilty, it is shown by the evidence here that this defendant and others had recently and at a short distance away committed a felony; that the officers had been notified of this fact, and, as was their duty, were undertaking to apprehend the alleged felons. A clear inference from this testimony is that this defendant was present. The evidence shows that in the car there were two or three persons. The evidence is clear that the shooting was done by at least three different pistols. In addition to that the evidence is that the pistol of this defendant had been recently fired. I think, in view of all of these facts, it is for the jury to say whether or not this defendant did or did not participate in the killing of Ollie Lancaster, and for these reasons the motion will be overruled."

The appellant introduced a number of witnesses to establish an alibi covering the entire period of time from Friday, the day before the killing, up to the time of his arrest on Sunday afternoon. The several members of appellant's family testified that he was sick and in bed at his home all day on Saturday preceding the killing Saturday night; that about nine o'clock Saturday night he got out of bed and took his mother's automatic pistol and began greasing it before the fire in the room; that he carried the pistol out on the front gallery of the house, and shortly thereafter they heard a pistol shot; that the appellant returned to the room, saying that he had shot himself in the foot; that upon examination they discovered a pistol wound in his foot;

that they called a doctor to treat this wound the following morning; and that he remained in bed until his arrest that afternoon. Another witness testified that she visited the home of appellant on this Saturday afternoon and that he was then in bed, claiming to be sick. Other witnesses, living near the appellant's home testified that about nine o'clock on this Saturday night they heard a pistol shot at or near the appellant's home.

The appellant as a witness in his own behalf testified that he was sick and in bed at his home all day Saturday preceding the killing Saturday night, and his version of the manner in which he was wounded was the same as that of the other witnesses. He testified that while he was greasing the pistol he went on the front gallery to cool off; that he thought he had removed all the cartridges from the pistol; that he laid down in a swing and placed his foot up in the chains thereof; that he snapped the pistol and it fired, wounding his foot. He further testified that he was not on the freight train on the night of the killing; that he did not board this train at or near Vicksburg; and that he had never been in the city of Vicksburg.

On cross-examination he was asked if he was not at Pantherburn on the line of the Yazoo & Mississippi Valley Railroad on Friday afternoon preceding the killing, and if he did not see certain employees of the railroad there, and he denied that he was at Pantherburn on this occasion or that he had ever been there. Upon the question of the admissibility of the alleged confession he testified that he made the statement testified to by the chief of police, but claimed that the statements were made in response to leading questions which suggested to him the desired answer; that he was at the time laboring under great fear of being lynched; that the confession was made after repeated attempts on the part of the officers to secure from him some

admission of guilt; that on the occasion when he made
the confession the chief of police said to him, "You
had better come on down and tell something. If you
keep on trying to tell this kind of a lie they will hang
you. If you say you don't know anything about that
killing of the white man, they will pull a rope around
your neck, nigger; but if you go ahead and say you did
the robbing of the two negroes, I will get you out of it
light. Tell me who did the shooting and ·the killing,
and if you will tell me that I will probably get you a
life sentence in the penitentiary or a few years, and you
will be out." He further testified to other similar
statements made to him at the time by the chief of
police; that there were several men present at the time,
including the jailer, Gilmore; that previous to that
time certain parties had come into the jail and identified
him as being present on the train; that the night jailer,
J. W. Young, had stated in his presence that they were
going to hang the appellant. The other inmates of the
jail also testified that the night jailer made this state-
ment in the presence of the appellant.

On cross-examination of Martha Ann McMullen, the
mother of appellant, and Mose McMullen, his step-
brother, they were asked if, on the occasion of the arrest
of the appellant, they did not state to Mr. Simmons that
the appellant came home that morning between three
and five o'clock and that he was wounded when he came
home. They denied making the statement, and in
rebuttal Simmons, over the objection of the appellant,
was permitted to testify that they did make the state-
ment.

In rebuttal P. W. Mulverhill, a freight conductor on
the Yazoo & Mississippi Valley Railroad, was asked
whether he had ever seen the defendant before, and,
upon answering in the affirmative, he was then asked
where and when he had seen him, and he replied, "It
was Friday before Christmas." Counsel for the de-

fendant thereupon stated: "The defendant objects to this," and the court in ruling upon the objection stated: "I think the scope of the alibi, as undertaking to be laid by the defendant, began with Friday; it seems clear to me that the evidence in this case, and the establishment of the alibi, began with Friday evening" and the objection was overruled. The witness then testified that about three o'clock on Friday afternoon before the killing on Saturday night, he saw the defendant, with two other negroes, at Pantherburn, about sixty miles north of Vicksburg, and that he was about three or four car lengths from him. The witness was then examined as follows:

"Q.   Was he facing you?   A.   Yes, sir; he shot at me.

"Q.   You called him to get off?   A.   That is why he shot at me.

"Q.   How many times did he shoot at you?   A.   He shot at me one time."

Thereupon counsel for the defendant announced: "We move to exclude this evidence on the same ground," and this motion was overruled. Other witnesses were also introduced in rebuttal to deny certain statements of the appellant and other witnesses as to threats directed at the appellant, but this testimony is not particularly material to a decision of the questions raised by the assignments of error and argument for the appellant.

The assignments of error which we deem it necessary to notice here are those which are argued at length by counsel for the appellant. The first of these is that the court erred in admitting evidence of the robbery committed by the appellant and his companions a short while prior to the killing, and for which crime the officers were attempting to arrest him; and also in admitting testimony showing the presence of the appellant at a point north of Vicksburg on the day before the killing, and that he then and there shot at a man.

The admissibility of the testimony tending to show that the appellant and his companions had committed a robbery a short time before the killing was considered in the companion case of *Hurd* v. *State,* decided by this court on December 15th, and not yet reported, and it was there held that "in the trial of a person for murder for the killing of an officer attempting to arrest the parties who had committed a robbery, evidence of the commission of such felony by the defendant and his companions is admissible, where it tends to show that the defendant was' present at the time and place of the killing, and tends to establish the identity of the defendant as a participant in the killing, and that it is also admissible as tending to show motive for resisting arrest, and that the defendant and his companions were confederated together for the felonious .purpose of robbery and resistance to arrest, and that in furtherance of this common design the officer was killed by one of the conspirators, in which case the killing of the deceased, by whichever of them done, would be the act of each and all of them," and also that it was admissible "for the purpose of showing that the officers were justified in going to the place for the purpose of arresting the participants in the robbery, and as tending to show that the appellant, with his confederates, and armed with a pistol, was on the train and present at the time and place of the shooting, and had an opportunity to participate therein." This holding is applicable and controlling here, and disposes of the' contention that the testimony in reference to this robbery was inadmissible.

In view of the fact that the appellant offered testimony to show that he was in the city of Jackson from Friday morning until his arrest after the killing, and the testimony of the appellant himself that he had never been at Pantherburn, and that he had never been in the city of Vicksburg, and did not board the freight train at

or near Vicksburg and ride thereon toward the city of Jackson on the night of the killing, and the further fact that in traveling by rail over the direct route from Pantherburn to the city of Jackson one would pass through the city of Vicksburg and the towns of Edwards and Bolton, we think that under the rule announced in the Hurd case the testimony in reference to the Pantherburn episode was admissible as tending to identify the appellant as a companion of the slayers and to show that he was armed with a pistol, and to contradict the testimony of the appellant and his witnesses that he was in the city of Jackson on Friday afternoon and night, and as tending to contradict his testimony that he had not been in the city of Vicksburg and had not traveled from that place to Jackson during the period covered by the alibi which he sought to establish. The The contention of the appellant now made that, in any event, that portion of the testimony of this witness stating that ''he shot at me one time'' should have been excluded cannot be maintained for another reason. After the witness testified that he saw the appellant on Friday before the killing on Saturday, a general objection was interposed to this answer of the witness. After testifying in detail as to the circumstances under which he saw him and as to his identification of the appellant, he was then asked this question: ''Was he facing you?'' To this he answered, ''Yes, sir; he shot at me.'' He was then asked the further question: ''You called him to get off?'' He answered, ''That is why he shot at me.'' In both of these answers the reference to the shooting was injected by the witness, and was not responsive to the questions, and no motion was then made to exclude this portion of the testimony of the witness. The witness was then asked the following question: ''How many times, did he shoot at you?'' and he replied: ''He shot at me one time.'' Thereupon a motion was made ''to exclude this evidence on the same grounds.'' This

general motion to exclude covered the entire testimony of the witness, and no specific motion was made to exclude that part in reference to the shot, and, as held by this court in the case of *Magee* v. *State,* 21 So. 130, error in admitting certain portions of the testimony of a particular witness is not reached by a motion to strike out the whole of the testimony of such witness, other parts of which are perfectly material and competent.

The next assignment of error argued by counsel is that the court erred in admitting in evidence the purported confession without first having fully examined into the evidence · in the absence of the jury and determining whether or not it was beyond a reasonable doubt free and voluntary.

It is undoubtedly true that the court ' erred in his statement of the rule to be applied in determining the competency and admissibility of a confession, but in the application of the rule and in the conclusions and result reached we do not think there was any prejudicial error. The rule for determining the competency and admissibility of confessions is clearly stated in the case of *Ellis* v. *State,* 65 Miss. 44, 3 So. 188, 7 Am. St. Rep. 634, as follows:

''Before a confession is received in evidence against a defendant in a criminal trial, it should be shown that it was voluntary; that is to say, made without the influence of hope or fear being exerted on the accused by any other person. Whether it was so made or not, is a preliminary matter for the court and not for the jury to determine. The jury have nothing to do with the competency of evidence; that is a question exclusively for the determination of the court. The court should decide in the first place, after investigation, whether a proposed confession shall be heard by the jury or not, and, if it is deemed competent by the court, and is permitted to go to the jury, they are the exclusive judges of its weight and value as evidence. When it is proposed

to introduce in evidence a confession of the accused against himself, the court should, upon a preliminary investigation conducted out of the presence and hearing of the jury, if requested by the defendant, determine whether it is competent or not. If satisfied, after hearing all the testimony pertinent to the inquiry, that the confession is admissible, it should go to the jury, but, unless it plainly appears that it was free and voluntary —if there is a reasonable doubt against its being free or voluntary—it should be excluded from the jury. *Simmons* v. *State*, 61 Miss. 243.

"After a confession has been admitted by the court, either party has a right to produce before the jury the same evidence which was submitted to the court when it was called upon to decide the question of competency, and all other facts and circumstances relevant to the confession, or affecting its weight or credit as evidence; and if it should be made to appear at this point, or any other, during the progress of the trial, that the confession was made under such circumstances as to render it incompetent as evidence, it should be excluded by the court."

In the case at bar, at the request of the defendant, the court conducted a preliminary investigation as to the competency of the confession, out of the presence and hearing of the jury. At this hearing the defendant did not ask to be permitted to cross-examine the witness, and did not offer, or ask to be permitted to offer, any testimony bearing upon the competency of the confession. The testimony of the witness before the court, if believed, undoubtedly showed that the confession was competent, and it was admitted by the court. The same evidence which had been submitted to the court was then produced before the jury; and at the conclusion of the testimony for the state, in passing upon a motion to exclude the confession because it was not shown beyond a reasoable doubt to

have been free and voluntary, the court held that—''On the question as to whether the confession was voluntary, according to the proof, I think it is shown by the testimony of these witnesses beyond any question that the admissions made by the defendant were voluntary.''

Upon the testimony before the court it is manifest that no other conclusion could have been reached than that the confession was free and voluntary, and in the result reached we think the law as announced in the Ellis case was followed. At the preliminary investigation conducted by the court to determine the competency of this confession the defendant did not offer to introduce any testimony bearing upon this question, and did not suggest to the court that he desired to introduce any such evidence, or that he had any to offer, and having failed so to do, he cannot now complain that, upon the evidence before the court, it was held to be competent.

The next assignment of error argued by counsel is based upon the action of the court in permitting the chief of police of the city of Jackson to testify in rebuttal that, on the occasion when he arrested the appellant, Mose McMullen and Martha Ann McMullen told him that the appellant came to his home about four or five o'clock on the morning after the shooting, and that his foot was then wounded by a pistol shot. On cross-examination these witnesses had denied that they so stated, and it is the contention of the appellant that this matter was collateral, immaterial, and irrelevant, and that it is not competent to impeach or contradict a witness about a collateral or immaterial matter. In support of this rule counsel have cited many authorities, but rely principally upon the case of *Williams* v. *State,* 73 Miss. 820, 19 So. 826, in which many authorities are collated and the subject is exhaustively discussed, and we agree with counsel that the holding of the court in this case is sound, and that the court there laid down the proper test to be applied in determining what evi-

dence offered in contradiction of a witness is admissible. We think, however, that the contention here is based upon a misconception of the nature of the fact embodied in this unsworn statement of these witnesses. These witnesses, as well as others, had testified that the defendant was at home on day preceding the homicide on Saturday night, and that he spent the entire night there, and was wounded by a pistol accidentally discharged at the home. The movements of the appellant on the night of the homicide were vitally material as shedding light on the question of whether or not he was present at the place of the homicide, and if the state, in connection with the other testimony in the record, had offered testimony to show that the appellant did not reach his home until four or five o'clock on the morning after the homicide, and that he was wounded from a pistol shot when arrived at his home, it clearly would have been material and admissible. The sworn statement of these witnesses was that the appellant was at his home at the time the homicide was committed, and that he received the wound in the foot from a pistol accidentally discharged by him while at or in his home. The unsworn statement of the witnesses, as testified to by the officers, was that he did not reach his home on this night until four or five o'clock a. m., and that when he came home he was wounded in the foot, and we think that this was a material matter about which it was clearly competent to contradict the witnesses, and that it comes within the rule laid down in the Williams case, *supra,* that— "Whilst the unsworn statement out of court may be used to contradict the sworn statement in court, whether the statement sought to be contradicted is made by the witness on his direct examination or on his cross-examination, in either case the statement in court must be one embodying a fact substantive in its nature and relevant to the issue made in the case."

Finally, it is argued that the testimony is insufficient to support the verdict of the jury, this question having

been raised in the court below by a motion to exclude the evidence and direct a verdict of not guilty, which was made at the conclusion of the testimony for the state, and by a request for a peremptory instruction at the conclusion of all the testimony.

If the testimony of the state's witnesses is believed, the conclusion is inescapable that the appellant was on the freight train at the time and place of the homicide, and there is ample testimony to warrant the conclusion that a short while before the shooting a robbery was committed on this train by the appellant and his confederates, and that they were all armed with pistols, and we think these facts, in connection with the admissions of the appellant, and with the fact that the officers were greeted with a fusillade of shots when they approached the train for the purpose of arresting the parties who had committed the robbery, and all the other facts and circumstances surrounding the killing, as testified to by the witnesses, were sufficient to warrant the jury in finding that the appellant was present at the time and place of the shooting, and that he and his companions were confederated together for the unlawful and felonious purpose of robbery and resistance to arrest, the natural and probable consequence of which involved the contingency of taking human life, and that in furtherance of this common design the officer was killed by one of the conspirators, in which case the killing of the deceased, by whichever of them actually done, was the act of each and all of them.

We do not think there is any merit in any of the other assignments of error, and consequently the judgment of the court below is affirmed, and Friday, January 30, 1925, is fixed as the date for the execution of the sentence.

*Affirmed.*

ANDERSON, J., dissents.