BUCHANAN *v.* STATE

No. 40036 November 28, 1955 83 So. 2d 627

*Harmon Broom,* Jackson, for appellant.

*Wm. E. Cresswell, Asst. Atty. Gen.,* Jackson, for appellee.

McGEHEE, C. J.

On April 4, 1954, the appellant Robert Buchanan entered the bedroom of Mrs. Mary E. Hiatt between 2:00 and 3:00 o'clock A.M., and according to the charge contained in the indictment in this case "did then and there wilfully, unlawfully, feloniously, and forceably rape, ravish, and carnally know Mrs. Mary E. Hiatt, a female person".

There is no conflict in the oral testimony at the trial as to the commission of the crime or as to the identity of the person who committed the same. Mrs. Hiatt, who was about thirty years of age and the mother of three children, had come to "the city of Jackson in the First Judicial District of Hinds County", from her home at Gibson, Louisiana, located "75 miles on the other side of New Orleans", (beyond New Orleans from Jackson, Mississippi, where the trial was being held), on a visit to her mother in Jackson, Mrs. Bernice Swilley, who resided on Missouri Avenue and who was part owner and operator of a drive-in restaurant.

Upon arrival in Jackson about nighttime, Mrs. Hiatt first went to the home of her sister where she stayed until after 11:00 o'clock P.M. and left her little girl, before going to her mothers, due to the fact that her mother was still at work at the cafe. She then went to the cafe, visited a short while with her mother, and then decided to go on to her mother's home and retire for the night, because she was tired from the trip from Gibson, Louisiana, to Jackson, Mississippi. She testified that when she arrived at her mother's home there was no one else there and that there was no light burning save one light in the living room of the house; that she entered the unlocked back door, went into a bedroom and retired; that later she was awakened by her mother who came from the cafe to the house to get a blanket for the lady who was her business associate; that she then went back to sleep and was later aroused by an intruder, whom

she at first thought was her mother returning to the room, but learned otherwise from hearing the intruder's voice as he came to the bed and made known his mission in the room; and that she raised up in the bed and began screaming and was thrown back down by the intruder who began choking her and threatening her life if she gave any further alarm. The victim further testified that after the offense was committed the intruder warned her if she gave any alarm after he left he would return and kill her, but nevertheless after he had left the house through the back door she ran out and went to a nearby house where her mother and the other lady were at the time. Her mother testified that she was crying and was very hysterical when she told them what had occured.

It seems that her mother immediately reported the occurrence to the police and upon the arrival of the officers the victim made the same complaint to them. She was then carried to a hospital, but the doctor who attended her there was either out of town temporarily or had moved away at the time of the trial and he did not testify.

Mrs. Hiatt testified that when she retired she placed her purse on the floor by the bed and that she had a small amount of money in this purse. When the officers arrived at the home they found the purse on the floor in the kitchen and that there was no money in it. The victim remained in Jackson two or three days and then returned home and was in the hospital at Thibodeaux, Louisiana, for three or four days as the result of the experience on the occasion complained of.

The accused Robert Buchanan was not arrested until August 19, 1954, during an investigation of some burglaries in Jackson where the perpetrator of those crimes had entered an unlocked back door in each instance, propped it open as on the occasion in question and had left the houses by the same route. Those circumstances caused the officers to question Buchanan in regard to

the crime against Mrs. Hiatt. As a result he requested that certain religious and other leaders be invited to come to the jail in order that he may make a full statement to them in regard to the matter. The proof shows without any dispute whatsoever that at the instance of the accused there was summoned to the jail the Rev. Wm. A. Keal, a retired minister; Dr. Luther Joe Thompson, pastor of the Calvary Baptist Church in Jackson; Earl E. Banks, a negro undertaker; Rev. C. A. Greer; Sara Hardy, a negro reporter for the Mississippi Enterprise, some sort of a newspaper; Ralph Hutto, of the staff of the Jackson Daily News; Pinckney Keel of the Jackson Clarion Ledger; M. B. Pierce, Chief of Police; and Detectives W. T. Chapman and J. R. Luke, together with the father and mother of the accused Robert Buchanan.

Thereupon the accused made a free and voluntary oral statement of considerable length to the persons above mentioned, and then on the same day he made a written confession, as witnessed by W. T. Chapman and J. R. Luke, in which he changed to some extent his previous oral confession, and in which written confession he admitted entering the room on the occasion complained of, taking the money from the purse, placing his hands at the neck of Mrs. Hiatt before committing the alleged offense, but which purports to differ from her statement in some of the details and which was to some extent at variance with his oral confession as aforesaid.

However, the defendant did not take the stand to deny to the jury her version of what occurred and he introduced no witness other than his father, and that witness stated only that the defendant had been an excessive drinker of intoxicants, and that he hoped that the jury would spare his life. The father admitted that the accused had confessed to the crime in the presence of the persons hereinbefore named, and several of those present also testified to the same effect.

No question was raised during the trial in regard to the confession not being freely and voluntarily made. The jury was amply warranted on the oral testimony in finding in the light of the written statement of the accused, all of which was introduced in evidence without objection, that the accused Robert Buchanan was the perpetrator of the crime for which he was indicted.

However, the accused, as the appellant here, seeks to obtain a reversal of the case on the following grounds: First, that the trial court erred in not allowing the defendant to change his plea of not guilty entered prior to the trial to a plea of guilty in the presence of the jury and in open court at the trial; second, that the court erred in failing to conduct a preliminary hearing in the absence of the jury to determine whether or not the confession was freely and voluntarily made; third, that the court erred in not sustaining a demurrer to the indictment; fourth, that the State failed to meet the burden of proof to show the corpus delicti aliunde the confession; fifth, that the State failed to meet the burden of proof required by showing corroboration of the testimony of the prosecutrix; sixth, that the court erred in overruling the defendant's motion for a new trial; seventh, that the State failed to prove the venue of the crime; eighth, that the judgment entered does not show that the defendant was placed at the bar of the court to be sentenced; ninth, that the court erred in permitting declarations of the prosecutrix touching the details of the alleged crime, the place where it is said to have occurred and the purported identifications of the accused by the prosecutrix when he was placed in the line with four other Negroes for identification by her after his arrest, and when she identified him from the voice that she had heard in the room on the occasion of the commission of the crime; and tenth, that the verdict of the jury is contrary to the overwhelming weight of the evidence.

 █ There is no merit in the first of the foregoing assignments of error, under the decision of this Court in the case of Dickerson v. State, 202 Miss. 804, 32 So. 2d 881. Moreover, under Section 2358, Code of 1942, under which this indictment is drawn, a person convicted of this offense "shall suffer death, unless the jury shall fix the imprisonment in the penitentiary for life". Hence there was no error committed by the trial court in submitting the case to the jury on its merits in order that the jury could intelligently determine what penalty should be inflicted:

 █ As to the second assignment of error above stated, there was no issue for the trial judge to decide out of the presence of the jury as to whether or not the confession was freely and voluntarily made. The fact of it being a free and voluntary confession was not challenged by the accused, and no objection was offered to the testimony of the witnesses who were present nor to the admission of the written confession made on the same day. No request was made of the trial court to hear testimony out of the presence of the jury as to whether the confession was freely and voluntarily made, and no fact was developed in the examination or cross examination of the State's witnesses that would have warranted the court in suspecting that it may not have been free and voluntary. On the contrary, this proof affirmatively disclosed that it was made freely and voluntarily, the State having assumed to make this proof before the confession was offered in evidence. This assignment of error is not well taken under the decisions of this Court in the cases of Ellis v. State, 65 Miss. 440, 3 So. 188; Lee v. State, 137 Miss. 329, 102 So. 296; Randolph, et al v. State, 152 Miss. 48, 118 So. 354; Johnson v. State, 196 Miss. 402, 17 So. 2d 446, and the cases therein cited, together with the cases of Wright v. State, 212 Miss. 491, 54 So. 2d 735, and Stone v. State, 210 Miss. 218, 49 So. 2d 263, in the absence of a request by the accused

for a preliminary hearing on this issue out of the presence of the jury, or in the absence of an offer on the part of the accused to prove the involuntary nature of the confession.

■■■ Under the third assignment of error the demurrer to the indictment was correctly overruled, since the same was sufficient under Section 2358, Code of 1942, for the reason that it alleged that the accused forcibly ravished his victim and the proof disclosed that she was above 12 years of age.

■■■ As to the fourth assignment of error the corpus delicti of forcibly ravishing a female of the age of the victim in this case may be proved by the uncorroborated testimony of the prosecutrix. Sanders v. State, 150 Miss. 296, 116 So. 423; McLaurin v. State, 129 Miss. 362, 92 So. 289; and Fairley v. State, 152 Miss. 656, 120 So. 747.

As to the fifth assignment of error, Section 2359, Code of 1942, known as the "age of consent" statute, which relates to crime against a female person over twelve and under eighteen years of age, is the only statute which prohibits the accused being convicted upon the uncorroborated testimony of such an injured female, and that prohibition has no application to the offense charged and proved in the instant case.

From what has been hereinbefore stated the sixth assignment of error is not well taken.

■■■ As to the assignment of error No. 7, based upon an alleged failure to prove venue in this case, it is to be conceded that nowhere in the testimony in support of the State's case, nor elsewhere in the record, is there any direct or specific statement that the crime occurred in the State of Mississippi. However, it is shown that the offense occurred "in the City of Jackson, First Judicial District of Hinds County" and the record affirmatively shows that the trial was being conducted in the courthouse in the City of Jackson, First Judicial District of Hinds County, Mississippi, and in nine separate instances

in the testimony the witnesses stated "here in Jackson" or "here in town" while testifying on the witness stand in the courtroom of the First Judicial District of Hinds County, Mississippi. Moreover, it is shown without dispute that the crime occurred between 2:00 and 3:00 o'clock A.M. and that the prosecutrix ran to where her mother was, and that her mother summoned the officers and that they arrived between 2:30 and 3:00 A.M. Most assuredly she could not have run to Jackson, Tennessee, or to the City of Jackson in any other state to her mother within the time stated. Nor could her mother have come to the house for a blanket within a few minutes after the victim left her mother's cafe, if the cafe had been located in another state. The venue of a crime may be shown by circumstantial evidence, and we are of the opinion that under the case of Holloway v. State, 199 Miss. 356, 24 So. 2d 857, and the authorities therein cited, the venue was amply shown in the instant case.

 ██ As to assignment of error No. 8, based on the ground that the judgment of the trial court does not show that the defendant was placed at the bar of the court to be sentenced, it is true that the judgment does not so recite, but Section 1987, Code of 1942, declares that a judgment shall not be reversed because the record does not show "that the prisoner was present in court during the trial or any part of it, or that the court asked him if he had anything to say why judgment should not be pronounced against him upon the verdict", unless the error complained of, if not jurisdictional, was made ground for special exception in the lower court. If the prisoner was not placed at the bar to be sentenced, then he was not present during that part of the trial, and such an error should have been complained of in the trial court. No one ever heard of a trial judge in this state pronouncing a death sentence upon a convicted offender, within the past several decades at least, without having him present at the bar. And it is not contended in the

instant case that the defendant was not placed at the bar for sentence, but rather that the judgment merely fails to so recite. If the purpose of having a convicted offender placed at the bar is to enable him to say why judgment should not be pronounced against him, he could not have been prejudiced in the instant case by not having an opportunity to say something at the time of the sentence, if such were the case, for the reason that the trial judge had no discretion except to pronounce the death sentence as fixed by the jury. We are of the opinion that the failure of the judgment to recite that the defendant was placed at the bar for sentence does not constitute reversible error on this appeal, since such failure was not complained of in the trial court.

As to assignment of error No. 9, the record discloses that the court excluded the evidence complained of where there was objection made thereto.

Finally, as to assignment of error No. 10, instead of the verdict being contrary to the overwhelming weight of the evidence, the same fully sustains the verdict, and there was no testimony to the contrary.

Therefore, the verdict of conviction and sentence of death must be affirmed, and Tuesday, January 3, 1956, is hereby fixed as the date for the execution of the death sentence in the manner provided by law.

Affirmed and Tuesday, January 3, 1956, fixed as the date of execution.

All Justices concur.