BARNES, J.,
for the Court.
¶ 1. Aitvar Andre Jones was convicted in the Circuit Court of Lee County of one count of sexual battery and sentenced to a term of twenty years in the custody of the Mississippi Department of Corrections, with thirteen years suspended, and five years’ post-release supervision. Jones appeals arguing that the judgment was supported by insufficient evidence, and that the judgment was against the overwhelming weight of the evidence. Finding no error, we affirm.
SUMMARY OF FACTS AND PROCEDURAL HISTORY
¶ 2. S.S. is a relative of Rhonda Jones, who is married to Andre Jones. S.S. was temporarily staying with Rhonda and Andre, who lived in Tupelo, Mississippi, so that she could live closer to her employment. S.S. testified that during the morning of December 19, 2002, she was in the bathroom curling her hair when Andre entered the bathroom wearing only boxer shorts. She claimed that Andre grabbed her and attempted to rub against her. According to S.S., Andre told her not to tell Rhonda that he was wearing only boxers because “she would have a fit.” S.S. stated that she told Andre to stop, because he was married to her relative.
¶ 3. Andre then drove S.S. to work at her place of employment, whereupon she asked him to return at one o’clock to give her a ride home because, according to her, she had no other means of transportation. S.S. testified that when Andre left, she attempted to call her boyfriend and her grandmother to get a ride home, but was unable to secure transportation with either of them. Andre picked S.S. up from work to drive her back to her home in a neighboring town. However, he stated that he had to stop at his house first to cut his hair.
¶4. S.S. testified that upon arriving at Andre’s house, he approached her on his knees while she was sitting on the couch. She claimed that he then pulled her from the couch and sexually propositioned her. S.S. testified that she repeatedly attempted to push Andre away, telling him “that’s nasty because you’re married to my [relative].” Despite her efforts, she stated that Andre held her down and penetrated her. She continued to push Andre off of her, telling him no, whereupon he “just gave up.” At this point, according to S.S., Andre told her not to tell her “nosy cousin” what had happened.
¶ 5. S.S. testified that Andre then drove her to her home; she explained that Andre was her only ride home, because she “didn’t want to call [her] mama because [she knew] how [her] mama would have reacted when she would have got there.” On the way, Andre stopped at his mother’s house, a car dealership, and a convenience store. At his mother’s house, Andre went inside while S.S. stayed in the car. Andre’s brother Eric came out and spoke with S.S. At the car dealership, Andre went inside to check on his wife’s car, while S.S. again stayed in the car. At the store, S.S. was left alone in the car while Andre went in to get a beer. S.S. stated that she did not leave the car and call for help during any of these stops because Andre had threatened her not to tell “her nosy cousin,” and she feared for her safe *953 ty. She also claimed that, during the trip, Andre was “laughing and said that he had messed with a younger girl than me.” Upon arriving at S.S.’s home, Andre asked her for a drink of water, and she complied. According to S.S.’s version of events, Andre told her that “he was glad that I worked in Tupelo because he could get me all the time.” Andre also told S.S. that she “was lucky that [her] brother was coming home for school or he would get [her] again.”
¶ 6. After Andre had left her at her home, S.S. called her boyfriend and told him what had happened. She then told her grandmother, who contacted her mother. The same day S.S. went to the Tupelo police department and reported the sexual battery.[1] Andre also went to the police station on December 19 and gave a statement which was transcribed by Detective Ginger Moore. He returned to the police station and made a second statement on the morning of December 30. He claimed that the second statement did not materially differ from the first statement, but that it merely supplied additional facts which had been left out of the first statement. In his first statement, Andre claimed that he had sex with his wife in the morning, and made no mention of sexual encounters with S.S. In his second statement, Andre admitted having sex with S.S., but claimed that it was consensual.
¶ 7. According to Andre’s second statement, he woke up on the morning of December 19 and had sex with his wife. She then left to take their daughter to the doctor. Andre fell back to sleep, but was awakened by someone who sat on the bed and then climbed onto him and straddled his waist. Thinking the person to be his wife, Andre penetrated her. At trial, Andre stated that he pushed S.S. off of him when he fully awoke and realized that she was not his wife.[2] He then took S.S. to work, and returned at 1 p.m. to pick her up and drive her back to her home in a neighboring town. Andre claimed that he stopped first at his house, so that S.S. could get her things and he could cut his hair. While he was cutting his hair, he claimed that S.S., “[c]ame into the bathroom and started rubbing on me and making sexual remarks toward me.” When he finished cutting his hair, Andre left the bathroom to find S.S. naked. Andre claims that he acceded to S.S.’s demand for sex due to her threat to tell her mother that Andre raped her if he did not have sex with her.
¶ 8. Andre was indicted on the charge of sexual battery. The trial, in which both S.S. and Andre testified, was held on August 31, 2004. The jury returned a verdict of guilty against Andre, and the court imposed a sentence of twenty years in the custody of the Mississippi Department of Corrections, with thirteen years suspended, and five years of post-release supervision. From this judgment, Andre appeals.
I. WHETHER THE EVIDENCE WAS SUFFICIENT TO SUSTAIN THE VERDICT
¶ 9. The test for sufficiency of the evidence is stated as follows:
[I]n considering whether the evidence is sufficient to sustain a conviction in the face of a motion for directed verdict or for judgment notwithstanding the verdict, the critical inquiry is whether the evidence shows “beyond a reasonable *954 doubt that [the] accused committed the act charged, and that he did so under such circumstances that every element of the offense existed; and where the evidence fails to meet this test it is insufficient to support a conviction.” However, this inquiry does not require a court to “ask itself whether it believes that the evidence at the trial established guilt beyond a reasonable doubt.” Instead, the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.
Bush v. State, 895 So.2d 836, 843(¶ 16) (Miss.2005) (quoting Jackson v. Virginia, 443 U.S. 307, 315, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979)). In the instant case, the testimony of S.S. establishes that Andre forced her to have sex with him against her will. This evidence is sufficient to support a verdict of guilty of sexual battery.
¶ 10. Andre argues, however, that the testimony of S.S. was insufficient to sustain a verdict against him in the absence of other evidence supporting her testimony. However, “[n]umerous cases hold that a rape victim’s uncorroborated testimony alone is sufficient where it is consistent with the circumstances.” Taylor v. State, 744 So.2d 306, 312(¶ 16) (Miss.Ct.App.1999) (citing Goss v. State, 465 So.2d 1079, 1082 (Miss.1985); Barker v. State, 463 So.2d 1080, 1082 (Miss.1985); Blade v. State, 240 Miss. 183, 188, 126 So.2d 278, 280 (1961); Buchanan v. State, 225 Miss. 399, 409, 83 So.2d 627, 630 (1955)).
¶ 11. Even assuming that S.S.’s uncorroborated testimony was insufficient, “[t]his Court recognizes as corroborating evidence the victim’s physical and mental condition after the incident, as well as the fact that she immediately reported the rape.” Christian v. State, 456 So.2d 729, 734 (Miss.1984). In the instant case, S.S. testified that she reported the sexual battery to her boyfriend and grandmother almost immediately after being dropped off by Andre. It is undisputed that she went to the police station on the night of December 19 and reported the incident. Furthermore, Detective Moore testified that S.S. was in an excited state when she reported the incident, marked in S.S.’s unique circumstance by smiling and rapid speech.
¶ 12. Accordingly, the evidence was sufficient to sustain a verdict of guilty of sexual battery.
II. WHETHER THE VERDICT WAS AGAINST THE OVERWHELMING WEIGHT OF THE EVIDENCE
¶ 13. Since the evidence is sufficient to sustain the verdict, we next turn to the question of whether the verdict is contrary to the weight of the evidence. “When reviewing a denial of a motion for a new trial based on an objection to the weight of the evidence, we will only disturb a verdict when it is so contrary to the overwhelming weight of the evidence that to allow it to stand would sanction an unconscionable injustice.” Bush, 895 So.2d at 844(¶ 18) (citing Herring v. State, 691 So.2d 948, 957 (Miss.1997)). The appellate court sits as a hypothetical “thirteenth juror.” Id. As such, the Court weighs the evidence “in the light most favorable to the verdict.” Id. If, in this position, the Court disagrees with the verdict of the jury, “the proper remedy is to grant a new trial.” Id. But, “[t]his difference of opinion does not signify acquittal any more than a disagreement among the jurors themselves.” Id.
¶ 14. After a careful review of the record we find that the verdict of the jury *955 was not against the overwhelming weight of the evidence. “It is not our function to determine whose testimony to believe.” Taylor, 744 So.2d at 312(¶ 17). “We will not disturb a jury’s finding on conflicting testimony where there is substantial evidence to support the verdict.” Id. Considering the evidence in the light most favorable to the verdict, we find that the jury was presented two conflicting stories of the events that transpired on December 19, 2002, and it was well within the province of the jury to choose the version of events which it found most credible.
¶ 15. Andre urges that S.S.’s “conduct does not support her allegations.” He claims that the evidence points in his favor because S.S. asked Andre to pick her up from work even after he had made sexual advances toward her in the morning; because she allowed Andre to pick her up from work and came back to the house with him; because no physical evidence, such as scratches or bruises, were found on S.S.; and because she did not flee from Andre after the alleged sexual battery occurred, despite the fact that Andre stopped his car at several public places including a car dealership and a convenience store. Also, Andre argues that S.S.’s behavior when she gave her statement was inconsistent with that of a victim of sexual crime because she was smiling and giggling.
¶ 16. While the issues raised by Andre certainly address the credibility of S.S.’s testimony, we find that each issue addressed by Andre was explained by S.S. and Detective Moore’s testimony. S.S. claimed that she only accepted a ride with Andre back from work because she was unable to secure a ride by other means, and she was afraid to contact her mother who was out of town. The testimony given by Detective Moore established that many sexual crimes leave behind no physical evidence, especially when the victim is, like S.S., sexually active.[3] S.S. claimed that she did not flee from Andre’s car because he had threatened her, and because she saw no opportunity to escape or alert anyone to her situation. Finally, although Detective Moore testified that she was initially concerned about S.S’s demeanor during her first statement because she was smiling and giggling, she became convinced that this was simply an aspect of S.S.’s personality that became evident when she was in an excited state.[4] Detective Moore testified that she was convinced of the credibility of S.S.’s testimony because her testimony remained consistent throughout the course of the proceedings against Andre.
¶ 17. The jury was further entitled to weigh the credibility of Andre’s testimony regarding S.S.’s behavior. Andre’s initial statement made no mention of sexual encounters with S.S., however, apparently when he was informed that a rape kit had been performed on S.S., Andre made a second statement which admitted sexual contact with S.S., but claimed it was consensual. At trial, Detective Moore testified as to her belief that Andre’s statements and testimony were plagued by inconsistencies. Furthermore, Detective Moore testified that Andre’s wife weighed at least eighty pounds more than S.S., making Andre’s statement that he thought S.S. was his wife on the morning of December 19 seem implausible.
*956 ¶ 18. We find that the jury was perfectly reasonable in adopting S.S.’s version of the December 19 sexual encounter rather than Andre’s; therefore, we affirm.
¶ 19. THE JUDGMENT OF THE CIRCUIT COURT OF LEE COUNTY OF CONVICTION OF SEXUAL BATTERY AND SENTENCE OF TWENTY YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS WITHOUT PAROLE, WITH THIRTEEN YEARS SUSPENDED, AND FIVE YEARS POST-RELEASE SUPERVISION, FINE OF $2,000 AND MUST REGISTER AS SEX OFFENDER, IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
KING, C.J., LEE AND MYERS, P.JJ., SOUTHWICK, IRVING, CHANDLER, GRIFFIS, ISHEE AND ROBERTS, JJ., CONCUR.

. On January 13, 2003, S.S. returned to the police station and gave a statement which was transcribed by Detective Ginger Moore.

. It is unclear from his statement and trial testimony whether he claimed that he realized it was S.S. before or after the penetration occurred.

. Although a rape kit was performed on S.S., it became moot because Andre subsequently admitted to having sex with S.S.

. From the trial transcript, it is evident that S.S. was smiling and speaking very quickly during her testimony at trial due to her nervousness.