### ELLIS v. STATE.

(In Banc.   Nov. 12, 1945.)

[23 So. (2d) 688.   No. 35960.]

**Sam E. Lumpkin**, of Tupelo, for appellant.

**Greek L. Rice**, Attorney General, by **Geo. H. Ethridge**, Assistant Attorney General, for appellee.

Roberds, J., delivered the opinion of the court.

Ellis was indicted for the murder of Savannah Woods, convicted of manslaughter, sentenced to the state penitentiary for ten years, and he appeals.

He contends (1) that his application for a continuance should have been granted, (2) that confessions in-

troduced by the state were not free and voluntary, and (3) that the proof is insufficient to convict him.

His application for continuance was based upon the absence of his brother, Elisha Ellis. The crime occurred the night of Friday, January 5, 1945. Appellant was arrested the night of January 8th and placed in jail. His confessions were made January 10th. During this time Elisha was at the home of appellant and he was present when the confessions were made. It is not shown just how long he remained in this state after January 10th—apparently, only a short time. The case was tried May 29, 1945. No process was issued, or requested, for Elisha, nor is it shown that appellant made any effort to procure his presence as a witness at the trial. Elisha was a nonresident of Mississippi and there is no proof whatever that he would likely be available as a witness at any future trial of the case. Granting or refusing continuances is a matter largely within the discretion of the trial judge. We cannot say it was error for the court to overrule the motion for a continuance under the circumstances here. Section 1520, Code 1942; Lamar v. State, 63 Miss. 265; Ware v. State, 133 Miss. 837, 98 So. 229; Cox v. State, 138 Miss. 370, 103 So. 129; Everett v. State, 147 Miss. 570, 113 So. 186; Samuels v. State, 153 Miss. 381, 120 So. 920; Hodgkin v. State, 172 Miss. 297, 160 So. 562; Ogden v. State, 174 Miss. 119, 164 So. 6.

There were two confessions—one, oral, made in jail, the other, written, made in the office of the county attorney. It is not necessary for us to say whether they were or were not free and voluntary, for the reason appellant testified in the case and the only substantial difference between his testimony and the confessions is that in the confessions he said he "reached down and grabbed up a stick and hit her" without specifying the size of the stick, and in his testimony he said he hit her with a switch or stick about the size of his finger. But in either case the evidence is sufficient with the other evidence in the case to sustain the verdict of the jury. It is shown, outside of

the confessions, that Savannah lived with her husband about 250 yards from Ellis; that she had been cooking for Ellis about six months; that on the night of January 5th she came to his home late in the evening to cook a cake for Ellis and his brother Elisha, who was visiting appellant; that while Savannah was doing that appellant began to play his phonograph and discovered that some of the records had been scratched and damaged and that he accused Savannah of damaging them. This she denied, but Elisha contradicted her. A quarrel ensued. Later, about 9:30 to 10 o'clock, appellant told Savannah it was time for her to go home. She started home, and appellant, as had been his custom, started to accompany her. He had a flashlight and a twenty-two rifle. When they got about forty yards from the house, appellant again brought up the subject of the damaged records and the quarrel started over, appellant again accusing Savannah of damaging them. To this she replied that he was a liar; whereupon, according to the confessions, he reached down and picked up a stick and hit her, and, according to his testimony at the trial, he picked up a switch or small stick, about the size of his finger, and hit her. He says she ran away and he came back into his house and inquired if she had returned to the house, which she had not done. Later, about eleven o'clock, Ellis went to her home, awakened her husband and inquired if she had come home, and learned that she had not. About daylight the next morning appellant went back to her home and again did that, finding she had not returned. A search was made for her but her body was not found until the following Monday afternoon about 2:00 o'clock. When found, it was a mile and a half from the home of appellant and from her own home, in a creek bottom, and a short distance from the creek or canal. Her skull was crushed above the left eye, the wound being one and a half to two inches long. The doctor testified that she died from this wound, and that in his opinion it was caused by a blow with a blunt instrument, having,

very likely, a sharp edge. Her legs were badly scratched and skinned from her knees down, indicating that they had been dragged along the ground and through brush and weeds. Apparently, she had been dead for some time; some decomposition had set in.

It is thus seen that appellant was the last person with her; that they were angry; that appellant struck her with a stick which the jury might well have believed, and no doubt did believe, was of sufficient size and used with sufficient force as to, and it did, crush her skull, causing her death. It is not claimed by appellant that Savannah was making any threat or demonstration towards him whatsoever, and while he said she ran away, the jury, no doubt, reasoned that, after she had received this fatal wound, she could not have gone a mile, or any distance of length by her own efforts, and, too, that had she been able of her own motion to have gone any distance she would have gone to her home 250 yards away and not into the creek bottom, a mile distant, and that, consequently, her body was carried by appellant to the spot where it was found. It was reasonable, too, for the jury to conclude that his inquiries at her home were a ruse to divert suspicion from himself and not an act of solicitude for her welfare. Therefore, we think the evidence, without the confessions, was entirely sufficient to uphold the verdict of the jury.

Affirmed.