COCHRAN, et al. *v.* PEELER, et al.

Division A. Sept. 25, 1950.

No. 37545 (47 So. (2d) 806)

Barnett, Jones & Montgomery, for appellant.

**Lipscomb & Ray,** and **Morgan, Thornton & Morgan,** for appellees.

**Lee, J.**

Jack Cochran, a minor, by his next friend, sued S. J. Peeler and others to recover for serious personal injuries sustained by him allegedly on account of the negligence of the defendants. The jury rendered a verdict for the defendants, and Cochran has appealed here.

The errors assigned on this appeal are the granting of four instructions to the defendants, which instructions are unnumbered, but which we designate as (A), (B), (C), and (D), and are as follows:

(A) "The Court instructs the Jury for the defendants that under the law of the State of Mississippi, a person riding a bicycle shall not follow another vehicle more closely than is reasonable and prudent, having due regard for the speed of such other vehicle and the traffic upon and the conditions of the street and if you believe from the evidence in this case that the plaintiff was violating this requirement of the law upon the occasion complained of in the declaration and that such violation was the sole proximate cause of the accident, then it is your sworn duty to find for the defendants."

(B) "The Court instructs the Jury for the defendants that neither under the law of the State of Mississippi nor the ordinances of the City of Kosciusko, was Frank Wil-

son required to come to a complete stop before turning through the Natchez-Wells Street intersection and unless you believe from a preponderance of the evidence that the failure of the said Frank Wilson to stop before turning through said intersection amounted to negligence and that such negligence was the proximate or a contributing cause of the accident, then it is your sworn duty to find for the defendants.''

(C) ''The Court instructs the Jury for the defendant that under the law of the State of Mississippi, a person riding a bicycle is prohibited from passing another vehicle going in the same direction on the right hand side of said vehicle and is also prohibited from passing another vehicle under any circumstances when approaching within 100 feet of or traversing any intersection. The Court further instructs you that under the undisputed evidence in this case, plaintiff himself was violating both of said laws and if you believe from the evidence that such violation on the part of the plaintiff of either or both of said laws was the sole proximate cause of the accident, then it is your sworn duty to find for the defendants.''

(D) ''The Court instructs the Jury that under the undisputed evidence in this case the plaintiff himself was guilty of negligence as a matter of law and if you find from the evidence that the negligence of the plaintiff was the sole proximate cause of the injuries and damages sustained by him, then it is your sworn duty to find for the defendants.''

To determine the applicability and correctness of these instructions, a summary of the substantial facts is necessary.

The scene of this unfortunate accident was in the intersection of South Natchez and South Wells Streets in the City of Kosciusko. South Natchez runs into South Wells at an angle, thus forming a Y. In this angle, between these two streets, was situated a filling station. The pavement on these streets was 28 and 30 feet, respectively. There were no stop signs at or about the

intersection. To make a right turn from South Natchez and go north on South Wells described an arc of 325 degrees.

Three vehicles were involved: a truck with trailer attached, heavily loaded with logs, and driven by Frank Wilson; a bicycle ridden by Jack Cochran; and an automobile driven by Leonard Nix. The truck and the bicycle approached the intersection, proceeding on South Natchez, whereas the automobile neared the intersection, proceeding on South Wells.

It was undisputed that the bicycle was behind or to the side of the truck as both vehicles approached the intersection. The driver of the truck and his companion testified that they both held out their hands, signaling a right turn, as they approached the intersection. Other witnesses in a pick-up truck, a short distance behind, saw these signals. The appellant, at first, testified that he did not see the signals, but later, he said that they were not given. He admitted that he was behind the truck as it neared the intersection, but when the truck cut over to the left, he thought it was going to continue on South Natchez. He started to pass it in the intersection, but suddenly he saw the truck bearing down upon him from his left, about 10 feet away. He thereupon dropped a package, and held out his left hand, which was struck by the truck, thereby catapulting him and his bicycle into the pathway of the Nix automobile on South Wells. He was run over and injured by the Nix car. However, later in his evidence, he said that the truck hit both him and the bicycle. Nix, who was not a party-defendant, gave corroboration as to the impact of the truck upon the boy and the bicycle, and said that he could not avoid striking the appellant.

The witnesses in the pick-up testified that Cochran was riding to the rear and side of the truck just before the vehicles entered the intersection; that his feet were off of the pedals and were scraping on the pavement; that he appeared to be excited, and rode through the paved

portion in front of the filling station; that he rode his bicycle against the right end of the truck bumper, and was thereby deflected into the path of the automobile.

The driver of the truck and his companion testified that, after giving the signals which have been referred to, they actually turned very slowly to the right; that Cochran went through the paved section of the filling station, and suddenly came toward the front of the truck; that the driver applied the brakes, and that the truck did not actually strike the boy or the bicycle.

The weight of the evidence sustained the claim that the truck was moving very slowly in making the turn. The physical fact of traversing a curve with an angle of 325 degrees was potent on this point. However, the appellant estimated the truck's speed at about 25 miles an hour, and said that it did not slow down, and claimed that the speed of his bicycle was only about 12 miles an hour.

On motion of the appellant, the court and jury viewed the scene.

 It will be seen that Instruction (A) was based on subdivision (a) of section 8188, Code of 1942, which is as follows: ''The driver of a motor vehicle shall not follow another vehicle more closely than is reasonable and prudent, having due regard for the speed of such vehicles and the traffic upon and the condition of the highway.''

This prohibition was applicable to a bicycle by the provisions of section 8149, Code of 1942, which is as follows: ''Every person riding a bicycle or an animal or driving any animal drawing a vehicle upon a roadway shall be subject to the provisions of this Act applicable to the driver of a vehicle, except those provisions of this Act which by their nature can have no application.''

Admittedly, the bicycle was very close to the truck, either just behind or to the side, for the whole distance. Hence, this instruction announced an applicable principle of law, and was properly given.

As to Instruction (B), the evidence showed that there were no signs at or near the intersection of these streets, preferring the right-of-way of one motorist over another. Hence, neither the laws of the State nor the ordinances of the City of Kosciusko required Wilson to come to a complete stop. Whether a stop should be made was for the judgment of the individual motorist, in the exercise of ordinary care. While he was not peremptorily required by law to stop, yet the jury might have found, from the facts of the particular case, that it was negligence not to stop. The appellant was granted an instruction to the effect that, if the jury found that Wilson (1) was not keeping his truck under reasonable and easy control, and (2) was not keeping a reasonable and proper lookout, and (3) was not making his turn into South Wells Street in a reasonably safe manner, and that such action was negligence, then the jury should find for Cochran. Instructions must be based on the evidence. And the overwhelming evidence showed that the signals were given for a right turn; that the truck was under easy control; that it was moving very slowly; that it would have been impossible to turn the 325 degree curve if the truck had been kept against or near the curb; that it would have also been impossible to negotiate such a sharp curve, if the truck had been traveling at any considerable speed; that the truck actually stopped within about 8 or 10 feet; and that the skid marks were caused from the weight of the loaded truck rather than because of speed. In other words, the evidence was overwhelming that the driver of the truck was guilty of no negligence, unless it was that he did not come to a complete stop. When this instruction and the one given the appellant are viewed together, one as complementing the other, they soundly announced the law as applied to the facts.

Instruction (C) was a peremptory that appellant violated the law at the time in passing the truck. The statutes contemplate that, where vehicles are proceeding in the same direction, the passing shall be made on the

left. Section 8183, Code of 1942. But this is not permitted when approaching within 100 feet, or traversing an intersection. Section 8185, Code of 1942. Certain exceptions permit passing on the right. Section 8184, Code of 1942. But this is a case where the plaintiff, under the circumstances at that time, should not have attempted to pass at all. The violation was obvious. Hence the instruction was proper.

Instruction (D) was a peremptory that appellant was guilty of negligence. Now, in Instruction (C), the jury's attention was called to the fact of appellant's violation of the law, but such violation was not denominated *negligence*. When Instructions (C) and (D) are considered together, it is obvious that the court was instructing the jury that, what it said was a violation of the law in (C), was negligence in (D). Of course, ██ █ the violation of a law which regulates human conduct in the operation of vehicles on the roads becomes, by legislative fiat, negligence. ██ █ All instructions must be considered together. Hence, the criticism that the instruction was too general is not tenable. Besides, the appellant obtained an instruction on comparative negligence, in which the jury was informed that, even though he was guilty of negligence, still they would find for him, "provided you further believe from a preponderance of evidence that Frank Wilson was guilty of *negligence* on the occasion of the accident which proximately contributed to the accident and injuries", etc. (Emphasis supplied.) That instruction was not bad on account of the fact that it failed to specify wherein the negligence consisted, because the principles of negligence had already been pointed out in other instructions.

It must be kept in mind that all of these instructions, whether they were peremptories, or the issue was to be found by the jury, contained the necessary requirement that the jury must find such negligence to be the proximate or sole proximate cause before the defendants would

be entitled to a verdict. The degrees of negligence were for the jury to determine. Section 1455, Code of 1942.

The foregoing analysis is deemed a sufficient answer to such criticisms as we think necessitate a response, except for the criticism leveled at all of these instructions, in which it is contended that they constituted reversible errors for the reason that the appellant was not to be charged by the standard of care required of an adult. ██ ██ In other words, it is said that the standard of care required of him was only that degree of care which is ordinarily exercised by minors of like age, intelligence, experience and discretion.

Appellant observed that he had been unable to find a Mississippi case, involving the standard of care required of minors between 14 and 21 years of age, and, on that account he cites a number of cases from other jurisdictions. Triplett v. State, 169 Miss. 306, 152 So. 881, 882, deals with the capacity to commit crime. A 14 year old girl was convicted of manslaughter, and the sole question considered by this Court, on appeal, was her capacity to commit the crime. This Court restated the well-known conclusive and rebuttable presumptions, namely, that a person of 7 years of age is incapable of committing crime; and that a person between the ages of 7 and 14 years must be shown to have capacity, where that question is placed in issue. The Court then made this declaration: If "a person is fourteen years of age he is presumed to have capacity." On that trial, the appellant stated on the witness stand that she was 14 years old. But, on her motion for a new trial, it was shown that, while she was 14 at the time of the trial, she was less than 14 when the crime was committed. This Court held that the lower court was justified in refusing to grant an instruction that a child 14 years of age was prima facie presumed to be incapable of committing a crime, since the proof before the court, when the instruction was asked, did not show that she was under 14 years. And the Court adjudged that, from its examination of the

evidence, including the appellant's testimony, she had sufficient capacity to be responsible for her acts criminally.

In other words, in our State, a person 14 years of age is presumed to be capable of committing crime. In spite of that presumption, we are asked to say that it does not exist in the field of negligence. The appellant, for his unlawful act in passing the truck in the manner shown in this record, could have been held to answer for a misdemeanor, with the attendant penalty, just as in Triplett v. State, supra, the girl was sent to the penitentiary for two years. How can it be said that the appellant may be required to answer for his misdemeanor in a criminal capacity, and yet not be charged with the negligence which constituted his misdemeanor in a controversy concerning his civil or property rights? We think it is obvious that no valid distinction can be made.

At the time of this unfortunate accident, the appellant was 14 years, 5 months and 6 days of age. He was in the 9th grade. He did well in his school work. He was a member of the band. He started to riding a bicycle when he was in the 3rd grade and had had 6 years of experience. He was a good bicycle rider and had made "bicycle jumps." He did his own mechanical repairs. He once had a wreck with a car, and this taught him to keep out of their way. This experience helped him to develop judgment as to the possible result of liberties with automobiles. He lived near this intersection and was thoroughly familiar with it. These facts show that the appellant was at least average for his age, if not above. And so far as dangers attendant on riding bicycles over the streets of Kosciusko are concerned, his judgment, no doubt, equaled that of the average adult. A similar history as to capacity for guilt of negligence can be found in Mississippi City Lines v. Bullock, 194 Miss. 630, 13 So. (2d) 34, 145 A. L. R. 1199. It is true that the dominant point there was proximate cause, yet it was

recognized that a 12 year old boy could be guilty of negligence.

Appellees were entitled to rely on the presumption of capacity. 65 C. J. S., Negligence, Section 218, P. 982. Such presumption was not rebutted. There is no evidence whatever in this record that the appellant was not fully capable of understanding and appreciating the hazards which he assumed. But, if he wanted to show the contrary, the burden was on him. Although there was no evidence on which to base it, and presumably, the trial court, for that reason, would have refused it, no instruction on that point was even requested.

Added to all of the foregoing, we repeat, is the fact that the trial court, at the request of appellant, granted a view of the scene; and we cannot say whether the observations by the jurors of inanimate objects and other things, of evidentiary value to them, are depicted in this record.

We have concluded that the instructions complained of were not erroneous in holding the appellant to the same capacity as an adult. We have likewise said that, when all of the instructions are considered together, a fair announcement of the law was given. But, if we concede that these instructions are not faultless, even then there would be no justification to reverse this case, because the verdict appealed from is so thoroughly in accord with the great weight of the evidence that another fair jury could not, and would not, under their oaths, reach a different conclusion.

Affirmed.

**Coleman, C.,** took no part in the consideration of this cause.