SOUTHERN BEVERAGE CO., INC. *v.* BARBARIN.

Jan. 4, 1954

No. 39005 47 Adv. S. 60 69 So. 2d 395

494

*Brewer & Brewer,* and *William O. Luckett,* Clarksdale; *Lipscomb & Ray,* Jackson; and *Jerome F. Leavell,* Oxford, for appellant.

496

498

*Maynard, Fitzgerald & Maynard,* Clarksdale, for appellee.

500

HALL, J.

This suit was instituted in the circuit court against Southern Beverage Co., Inc., and T. J. Huddleston, d/b/a

Century Burial Association, for the recovery of damages for personal injuries received by appellee in an automobile collision which occurred about 2:30 p. m. on January 9, 1952, on U. S. Highway No. 61 at a point about six or eight miles north of Clarksdale. At the conclusion of all the evidence the trial court granted a peremptory instruction in favor of Huddleston and submitted to the jury the issue of negligence on the part of Southern Beverage Co., Inc., which company appeals from a judgment against it entered upon the verdict of the jury.

Four vehicles were involved in the collision. Huddleston's hearse was returning to his funeral home with a dead body which had been picked up at Tunica, which is several miles north of Clarksdale; the hearse was traveling south and its gasoline supply became exhausted at the point of the collision with the result that it stopped on the paved portion of the highway with the right wheels resting on the shoulder of the highway some ten to eighteen inches off the pavement. The highway was straight and level for several miles in both directions. Appellee was traveling south in a Chevrolet automobile and approached the stalled hearse. A Packard automobile was traveling north in the east traffic lane, being operated at the time by R. Barry Sample. · A truck with trailer attached, owned by Southern Beverage Co., Inc., was traveling south and was following appellee's Chevrolet car. It was the only vehicle behind appellee's car. According to appellee's evidence, he saw the Packard automobile approaching and slowed his car down almost to a complete stop in the west lane of traffic and gave an arm signal by holding out his arm at an angle of about forty-five degrees to the ground; he says that he was moving so slowly that he could have stopped instantly when something crashed into his automobile from behind with such force that he was knocked unconscious. His Chevrolet car was knocked into the east traffic lane at an angle of approximately ninety degrees and was struck broadside

by the Packard car. A highway patrolman investigated the accident and all four vehicles were still on the scene at the time. The Chevrolet automobile was painted dark blue and he testified that he found paint markings on appellant's trailer, which was then in a shallow ditch on the west side of the highway, and that these markings corresponded in texture and color with the paint on the Chevrolet, and, in addition, that the body of the trailer bore scratch marks or indentations and that one of the side lights about midway the body of the trailer had been knocked out and that blue paint markings appeared on it. He also testified that near the rear of the trailer body there were indentations and paint marks of black color which corresponded with the paint on the hearse, and that skid marks on the pavement and wheel tracks on the shoulder of the highway showed that the truck and trailer had run off on the west side of the highway. The driver of appellant's truck testified that he positively did not strike the Chevrolet car but that he did strike the hearse; he further said that appellee gave no hand signal; that he had been following about 100 to 150 feet behind the Chevrolet; that it was drizzling rain; that he lit a cigarette and turned on his heater and the windshield fogged up and he picked up a rag and wiped the windshield, and "when I looked up I was close enough to the Chevrolet to start stopping. I put on the brakes and the motor went dead and the wheels slid. I hit the brakes again and it slid again, so I took to the right-hand side of the road. * * * I was too close to him." He said that he did not see the Packard car until after the accident and did not see the hearse until he left the road. The weight of the truck, tractor, and load therein was 52,000 pounds. He denied that there were any blue paint marks on the trailer, denied that the patrolman pointed out such marks to him, denied that they compared these with the paint on the Chevrolet, denied that they agreed they were the same color, and denied that he stated to the patrolman

that he must have hit the Chevrolet "because there are the paint marks and the scratches." Other pertinent facts will be given in discussing the appellant's several assignments of error, which will be taken up in the order in which they are raised in the brief.

1. After appellant's witness, the truck driver, had made the foregoing denials under cross-examination, appellee in rebuttal offered the highway patrolman as a witness and he testified over the objection of appellant that the truck driver looked at the blue paint on the side of the trailer and said that he must have sideswiped the Chevrolet car because the paint and the scratches were there to substantiate it. Appellant devotes the greater portion of his brief to an argument that it was error to admit this rebuttal testimony, relying on Williams v. State, 73 Miss. 820, and a number of other cases which have followed that decision. In the Williams case the Court stated the true rule to be: "Whilst the unsworn statement out of court may be used to contradict the sworn statement in court, whether the statement sought to be contradicted is made by the witness on his direct examination or on his cross-examination, in either case *the statement in court must be one embodying a fact substantive in its nature and relevant to the issue made in the case.*" (Emphasis supplied.) ▮▮ We are of the opinion that the question whether there was blue paint on appellant's trailer and whether the trailer struck the Chevrolet car was a fact substantive in its nature and relevant to the issue in the case. Indeed, if the trailer did not strike the Chevrolet, then appellee has no case against appellant; it was quite relevant and material to show the facts bearing on that question. This was not an attempt to contradict a witness on an immaterial and collateral matter as argued by appellant; the evidence went to the very heart of the issue in the case. Appellant's authorities to the effect that agency cannot be established against a principal by unsworn statements of the alleged

agent made out of court are wholly inapplicable here; there is no question of agency in this case for appellant's answer specifically admits that the driver of its truck was at the time of the accident acting within the scope of his employment and in furtherance of appellant's business.

██ ██ The general rule with reference to the admission of inconsistent or contradictory statements is laid down in 58 Am. Jur., Witnesses, Section 767, as follows: "After a proper foundation has been laid a witness may be impeached by evidence of his declarations or statements inconsistent with or contradictory of his testimony at the trial, even though such variant statements are made after the testimony. Impeachment in this manner is everyday practice. It is the method most frequently resorted to to discredit witnesses, and is in some jurisdictions expressly authorized by statute. This rule as to showing the inconsistent statements of a witness rests upon the obvious propriety and necessity of informing the jury of circumstances so directly bearing upon the credibility of the witness and the value of his testimony as do contradictory statements by him of the controverted facts concerning which he testifies, and which the jury must determine. The fact that he has stated the facts differently shows either a failure of memory, that he has forgotten what he once knew, or else it shows a want of integrity, and either way it impairs the value of his testimony."

The quoted rule has been followed by this Court in numerous cases. For instance, in Wilkinson v. State, 143 Miss. 324, 336-337, 108 So. 711, 46 A. L. R. 895, it was said: "While Mr. Barfield was on the stand as a witness for the State, appellant sought by cross-examination to discredit his testimony in the following manner: He had testified to facts tending to show that appellant shot the deceased not in necessary self-defense, but when appellant was in no danger either real or apparent of the loss of his life or being done great bodily harm at the hands

of the deceased. The witness was asked if he did not state on the morning after the killing to certain persons that Cherry was so large and powerful that appellant and Willis could not handle him at all; that during the fight Cherry threw the officers 'right and left.' The court would not permit the predicate thus to be laid for the purpose of contradicting the witness. We think the court erred. If it is true that Cherry was a powerful man and threw the officers 'right and left,' this fact would tend to discredit the testimony of Mr. Barfield to the effect that when the fatal shot took place appellant and Cherry were eight or ten feet apart. The evident purpose of appellant in seeking to lay the predicate by the cross-examination of this witness was to discredit his testimony, which may always be done in the proper manner.''

In Kolb v. State, 129 Miss. 834, 851, 93 So. 358, this Court said: ''If a witness testifies to a thing on the witness stand, being a material issue, the credibility of such witness may always be impeached by showing that such witness made contrary statements in reference to such fact at other times and places.''

In Lee v. State, 137 Miss. 329, 352, 102 So. 296, the Court said: ''The sworn statement of these witnesses was that the appellant was at his home at the time the homicide was committed, and that he received the wound in his foot from a pistol accidentally discharged by him while at or in his home. The unsworn statement of the witnesses, as testified to by the officers, was that he did not reach his home on this night until four or five o'clock a. m., and that when he came home he was wounded in the foot, and we think this was a material matter about which it was clearly competent to contradict the witnesses.'' The Court then quoted, as supporting its position, the same sentence which we have already herein-above quoted from the Williams case. To the same effect, see also George v. State, 39 Miss. 570; Head v. State, 44 Miss. 731; Harris v. Sledge, 21 So. 783; Bowles v.

506

State, 40 So. 165. We are of the opinion that the rebuttal testimony was clearly competent.

2. Appellant next contends that the trial court committed error in overruling an objection to the following question, which after repeated objections and a statement of the court that the highway patrolman could give the facts, elicited the answer given:

"Q. Just state one at a time, very carefully and slowly, each of the physical marks which you noted on that particular occasion, and what conclusion you drew from each of those marks as to how the accident in question occurred. * * *

"A. Well, the physical facts at hand showed that the Chevrolet and likewise the ambulance had been struck by the trailer of the truck that was involved."

Prior to this the patrolman had already testified to the tire markings on the pavement and the tracks of the truck-trailer made on the ground as it ran off the pavement. Immediately after the above quoted answer he testified in detail as to the physical facts upon which his statement was based, i. e., the blue paint marks and scratches and the damaged clearance light on the side of the trailer near its center, the black paint marks and scratches on the side of the trailer near its rear end, and that the blue paint marks on the trailer compared in texture and color with the paint on the Chevrolet. He further testified as to the marks, indentations, etc., on the back end of the Chevrolet and also on the back end of the hearse, which is referred to by some of the witnesses as the ambulance. It is undisputed that there was no vehicle behind the Chevrolet except the truck-trailer. Some of us are of the opinion that it was improper to permit the patrolman to give his opinion or conclusion about the matter, but eight of us are of the further opinion that the error, if any, was harmless or at least was not so prejudicial as to justify our reversal of the case. Others of us are of the opinion that the quoted statement of the patrol-

man was not a mere opinion of his but was a statement as to what the physical facts showed, which facts, as we have stated, were detailed in his testimony, and that the admission of the patrolman's answer is justified by the following general statement of the law as found in 32 C. J. S., Evidence, Section 459:

"Much effort is expended during the trial of causes to confine the testimony of witnesses to statements of what they saw, heard, or otherwise observed, as distinguished from inferences or opinions formed as a result of such observation. The distinction is, however, one which it is in many cases impossible to draw, for the reason that the most simple statement of fact involves an element of coordination, induction, or inference, the fact and the inference being frequently so blended that they cannot be separated. The modern tendency is to regard it as more important to get to the truth of the matter than to quibble over distinctions which are in many cases impracticable, and a witness is permitted to state a fact known to or observèd by him, even though his statement involves a certain element of inference."

We reiterate that in the opinion of eight of the judges the error, if any, was not so prejudicial as to justify us in reversing the judgment of the trial court. In so holding we are not to be understood as setting a precedent for all cases in the future, nor are we to be understood as holding that a highway patrolman, or any other person investigating an accident, should be permitted to give his opinion as to how an accident occurred. We specifically limit our holding to the facts of the case now under consideration.

3. Appellant next contends that the trial court erred in overruling its application for a continuance because of the absence of R. Barry Sample, the driver of the Packard automobile. At the time of the accident Sample was a resident of Memphis, Tennessee, but at the time of the trial he was a resident of Fort Worth, Texas. According

to the application for continuance Sample had been provided transportation to Clarksdale, Mississippi, from Fort Worth and had agreed to be present, but could not come because his employer had ordered him away from home temporarily, but that he would be able to attend the next term of court. The application set out at length a written statement of Sample as to the facts to which he would testify. In this statement Sample said that he saw the hearse as he traveled north and some 50 or 60 feet beyond it he also saw the top of a trailer and the cab of a tractor-trailer unit traveling at a speed of about forty miles per hour, and that this tractor-trailer unit swerved sharply to the right at a time when Sample was 60 or 70 feet in front of the hearse; that in just a moment after the tractor-trailer swerved, the Chevrolet, which he had not previously seen, suddenly shot out from behind the hearse and across the north bound traffic lane at practically a right angle to the road; that he was then practically upon the Chevrolet and did not have time to apply his brakes and he struck it broadside between the right rear fender and the right front door; he further said that he could not be positive whether the hearse was moving slowly or was stopped, that the Chevrolet was apparently between the hearse and the tractor-trailer unit, and ''I believe that the driver of the Chevrolet attempted to stop behind the hearse and skidded into the left rear corner of the hearse and then shot out across the north bound lane in which I was in. * * * At no time did I see the tractor-trailer unit hit any vehicle, however, it's possible that the left rear of the trailer struck the rear of the Chevrolet after the Chevrolet struck the hearse and turned around in the road. The Chevrolet definitely struck the hearse but I am quite sure that the tractor-trailer unit never touched the hearse in any manner.'' We first comment on some of the facts contained in this statement. Sample merely gave his belief that the Chevrolet tried to stop and skidded into the left rear corner

of the hearse and then shot across the road; he did not know what happened because he did not even see the Chevrolet until it shot across the highway; it is undisputed in the evidence that the Chevrolet did strike the left rear fender of the hearse causing a slight indentation therein, but from all the evidence the jury was justified in finding that this was after and because of the blow which had been given to the Chevrolet by the side of the trailer. Sample's statement is that he is quite sure that the trailer never touched the hearse, yet the driver of the tractor-trailer unit admitted that the trailer struck the hearse, and a photograph of the rear of the hearse clearly shows the slight indentation in the left rear fender attributed to the Chevrolet and also shows that the right side of the rear of the hearse received a tremendous blow sufficient to practically tear off the door which opens to the rear.

 Section 1520, Code of 1942, specifically provides that ''The court may grant or deny a continuance, in its discretion. * * * A denial of the continuance shall not be ground for reversal unless the Supreme Court shall be satisfied that injustice resulted therefrom.'' We have repeatedly held that the granting or refusal of a continuance are matters within the sound discretion of the trial court and that we will not reverse because of the refusal of a continuance unless it appears that the discretion of the trial court has been abused. Continental Insurance Co. v. Brown, 142 Miss. 199, 106 So. 633; Ellis v. State, 198 Miss. 804, 23 So. 2d 688, and numerous authorities therein cited; Newell v. State, 209 Miss. 653, 48 So. 2d 332; Wingo's Mississippi Criminal Law and Procedure, Section 138.

 In this case we do not think that the trial court abused its discretion in denying a continuance because of the absence of the nonresident witness, nor, in view of the comments which we have made concerning Sample's

statement, are we (in the words of the statute) "satisfied that injustice resulted therefrom."

4. It is next contended that the verdict of the jury was against the overwhelming weight of the evidence and was so excessive as to evince passion, prejudice and bias on the part of the jury. ██ We have already set out a great deal of the evidence on the question whether the trailer struck the Chevrolet car, and from what we have said we are of the opinion that there was a clear-cut issue for submission to the jury and that its verdict on the facts is amply supported by the evidence.

██ On the contention that the verdict is so excessive as to evince passion, prejudice, or bias on the part of the jury, appellant devotes only about one-half of one page of its voluminous brief. In considering this question it is necessary to summarize the evidence as to the extent of appellee's injuries. He was 55 years old at the time of the accident and had a life expectancy of 17.78 years. Prior to the accident he was active in his business and did strenuous work as a real estate appraiser and agent. His average earnings over the period of six years prior to the accident amounted to $5,770.00 per year. The flesh was torn from his heel, his leg cut, and the leg is still stiff. An old injury to his spine was aggravated. His neck was injured and is still stiff and he is unable to turn his head without pain. His right shoulder was fractured in the socket. The muscles and ligaments in his right arm were torn. He had a compound fracture of the right wrist on which two operations have been performed and another is necessary. His cheekbone was crushed in and the nerves of his face thereby affected. His tongue and the inside of his mouth and his lip and nose and throat were cut and scarred. Two or three of his ribs were fractured. He has since been in constant pain and is unable to rest without the use of sedatives. His business required the regular use of an automobile, which he drove himself, and he is no longer able to drive a car. As a con-

sequence his earning capacity has been reduced to almost nothing. In the year 1952 he was able to earn only $272.00. The jury returned a verdict for $37,000.00. Considering appellee's earning capacity prior to the injury, his life expectancy, the serious multiple injuries sustained by him, and the fact that he is in constant pain, we do not think the verdict is so large as to evince passion, prejudice and bias on the part of the jury. In the early case of N. O. J. & G. N. R. R. Co. v. Hurst, 36 Miss. 660, 74 Am. Dec. 785, this Court said: "It is the peculiar province of a jury to assess damages, and when, as in actions sounding in damages merely, the law furnishes no legal rule of measurement, save their discretion, under the evidence before them, it is very rare indeed that a court will feel itself justified in setting aside a verdict merely for excess. It is not enough that, in the opinion of the court, the damages are too high. It may not rightfully substitute its own sense of what would be reasonable compensation for the injury, for that of the jury. * * * The law has not intrusted the court with a discretion to estimate damages, but has devolved this power on a jury, as a matter of sentiment and feeling, to be exercised by them according to their sound discretion. * * * Judges, therefore, should be very careful how they overthrow verdicts, given by twelve men, on their oaths, on the ground of excessive damages." The above has been consistently followed by this Court for almost a hundred years. See: Memphis & Charleston R. R. Co. v. Whitfield, 44 Miss. 466, 7 Am. Rep. 699; Mississippi Central R. R. Co. v. Caruth, 51 Miss. 77; Yazoo & M. V. R. R. Co. v. Grant, 86 Miss. 565, 38 So. 502, 109 Am. St. Rep. 723; 4 Ann. Cas. 556; Mississippi Central R. R. Co. v. Hardy, 88 Miss. 732, 41 So. 505; St. Louis & S. F. Ry. Co. v. Hays, 136 Miss. 701, 101 So. 548; McDonald v. Moore, 159 Miss. 326, 131 So. 824; Mississippi Ice & Utilities Co. v. Pearce, 161 Miss. 252, 134 So. 164; Southern Bell Tel. & Tel. Co. v. Quick, 167 Miss. 438, 149 So. 107:

J. C. Penney Co. v. Evans, 172 Miss. 900, 160 So. 779; Aponaug Mfg. Co. v. Carroll, 183 Miss. 793, 184 So. 63; Biedenharn Candy Co. v. Moore, 184 Miss. 721, 186 So. 628; Mississippi Power & Light Co. v. Thomas, 206 Miss. 201, 39 So. 2d 759, 40 So. 2d 597; St. Louis-San Francisco Ry. Co. v. Dyson, 207 Miss. 639, 43 So. 2d 95; Sears, Roebuck & Co. v. Burke, 208 Miss. 306, 44 So. 2d 448; Peerless Supply Co. v. Jeter, 65 So. 2d 240, not yet reported in the State Reports.

5. ██ Appellant complains, finally, at the granting of two instructions to the appellee, which are numbered 2 and 3.

Instruction No. 2 is as follows: ''The Court instructs the jury for the plaintiff that it is a violation of Mississippi law to drive an automobile on a public highway of Mississippi at a greater rate of speed than is reasonable and proper having due regard to traffic and use of highway and that motorists must anticipate the presence of other persons and vehicles on said highway and drive at such a rate of speed as to enable them to avoid injury to such persons and vehicles. If you believe from a preponderance of the evidence in this case that defendant, Southern Beverage Co., Inc., violated this law on the occasion in question and that as a direct and proximate result of said violation plaintiff suffered the injuries for which suit is brought, then you shall return a verdict for plaintiff against defendant, Southern Beverage Co., Inc.''

The first sentence of this instruction is a substantial copy of one which was approved by this Court in Hadad v. Lockeby, 176 Miss. 660, 169 So. 691, with this omission which appellant contends is sufficient to render the instruction erroneous: ''When they come, or, by the exercise of ordinary care, would come within his vision or under his observation.'' The plaintiff in Hadad v. Lockeby was a pedestrian who started across a public highway and was struck by defendant's automobile, and it was quite proper that the jury be instructed that a driver

should drive at such a rate of speed as to enable him to avoid injury to a person in the highway when he comes or by the exercise of ordinary care would come within his vision or under his observation. In the case at bar we are dealing with an accident where the driver of appellant's truck-trailer admitted that he had been following appellee's car for a considerable distance, admitted that he saw it ahead of him, and, while he had been traveling at a distance of 100 to 150 feet behind it, he momentarily took his eyes off the road while lighting a cigarette, turning on his heater, and wiping his windshield, and when he looked up he was too close to the appellee's car. In view of these admissions by appellant's driver we do not think the instruction was erroneous in omitting the provision that the Chevrolet had come or by the exercise of ordinary care would come within his vision or observation. The instruction in Hadad v. Lockeby, supra, was also approved in Brand v. Tinnin, 190 Miss. 412, 200 So. 588, and, while not set out in the opinion, it is given in Alexander's Mississippi Jury Instructions, Section 823.

It is further argued that the second sentence of Instruction No. 2 is erroneous because it left out of view the question of the truck driver's negligence. That sentence is substantially the same as an instruction which was approved in Myers v. Tims, 161 Miss. 872, 138 So. 578, which, while not appearing in the opinion, is quoted in Alexander's Mississippi Jury Instructions, Section 819. That instruction made no mention of negligence but was planted squarely upon a violation of the law, and in his comment in Note 79 under said Section 819, Judge Alexander observed that if the speed is unlawful, the negligence is per se. In Cochran v. Peeler, 209 Miss. 394, 408, 47 So. 2d 806, we said that "the violation of a law which regulates human conduct in the operation of vehicles on the roads, becomes, by legislative fiat, negligence."

Instruction No. 3 is similar to No. 2 and appellant makes the same criticism of it. What we have already

514

said with reference to Instruction No. 2 is a sufficient answer to appellant's argument with reference to No. 3. Moreover, appellant obtained an instruction which told the jury that the burden is upon the plaintiff to establish negligence on the part of defendant by a preponderance of the evidence and unless plaintiff has shown by a preponderance of the evidence that there was negligence on the part of defendant which proximately contributed to the collision and alleged injuries, then it is the sworn duty of the jury to find for the defendant. Appellant also obtained another instruction which told the jury that if they believe from the evidence that defendant's truck was being driven in an ordinarily prudent manner and with ordinary care, and without negligence on the part of defendant, and that its driver was confronted with a sudden emergency and that he did what he thought best in the circumstances and that his action was such as a person of ordinary prudence might have taken in a like situation, then the defendant would not be guilty of negligence because another course may have been more judicious, and in such case it is the sworn duty of the jury to find for the defendant. Appellant also obtained an instruction under our comparative negligence statute, and another to the effect that no negligence on the part of defendant can be presumed because there was an accident or because plaintiff was injured. All the instructions must be considered together, Brown v. Watkins, 213 Miss. 365, 56 So. 2d 888, and when that is done in this case we think the jury was fairly and correctly instructed as to the applicable law. Therefore the judgment of the lower court is affirmed.

Affirmed.

*McGehee, C. J.,* and *Lee, Kyle, Holmes, Arrington, Ethridge* and *Lotterhos, JJ.,* concur.

Roberds, J., dissenting.

In my view the action of the learned trial court in permitting the patrolman to give the jury his opinion, or conclusion, as to what caused the wreck and injury was reversible error, for these, and other conceivable, reasons:

1. Aside from that action, the affirmance or reversal of this case is a close question. The admission of other evidence over objection of defendant; denial of the application for continuance; the size of the verdict; the granting to plaintiff of certain doubtful instructions, all as disclosed in the able majority opinion, demonstrate, I think, the accuracy of the foregoing statement. That fact cautions care in holding the scales of justice balanced in the admission of this opinion evidence.

2. The testimony was admitted on the assumption the witness was an expert. He was asked this question by counsel for plaintiff: "Just state one at a time, very carefully and slowly, each of the physical marks which you noted on that particular occasion, and what conclusion you drew from each of those marks as to how the accident in question occurred?" Counsel for appellant objected on the specific ground "That's a conclusion." Counsel for plaintiff replied "He's an expert; that's the only way." Counsel for appellant then stated "You have not qualified him as an expert." The court then said "I think they are admissible in evidence." These quotations show conclusively the testimony was admitted on the theory this witness was an expert. Now, that was incorrect for two reasons: The first is there was not a line of testimony that this witness was, or claimed to be, an expert on the collision of vehicles, and the second is that this was not a subject for expert testimony even had the witness tried to qualify as such. "Such testimony cannot be received either to prove or disprove those things which are supposed to lie within the common knowledge, experience, and education of

men." 20 Am. Jur. pg. 651, Sec. 781. Here was a set of simple facts and a conclusion to be drawn therefrom. The simple facts were that on the side of the trailer there was a small indenture about twice the size of a silver dollar, according to pictures in the record, which indenture contained a blue substance, and the Chevrolet car was painted blue. Question—Did this prove trailer struck the Chevrolet car, causing the wreck? Any man on the jury, qualified to serve, was just as capable of drawing that conclusion as was the patrolman. But the patrolman assumed the functions of the jury. He gave his conclusion and his inference. The jurors understood he was testifying as an expert. Naturally the words of these men, whose duty it is to patrol the highways and examine into automobile collisions, go far with the ordinary juror. It should be remembered that this indenture was not discovered until sometime after the wreck occurred. There is no proof it was not on the trailer before the wreck. No chemical analysis was made of the substance and the paint to determine whether they were the same.

3. This was not a complicated situation where difficulty existed in separating the facts from the conclusion. All that was needed was to confine the witness to a statement of what he saw. It was not necessary for him to invade the province of the jury.

4. Whether the trailer hit the Chevrolet was the determinative question in the case. As tersely stated in the majority opinion, "Indeed, if the trailer did not strike the Chevrolet, then appellee has no case against appellant." That was the law suit. The truck driver swore the trailer did not hit the Chevrolet. The driver of the ambulance did not know. Mr. Barbarin said he did not know. He said something struck his car; he did not know what. Mr. Sample, driver of the Packard, was not at the trial. From his statement he did not know. So that, as stated, the crucial question was whether that did happen. It was natural that the in-

ference drawn by the patrolman bore heavily upon the jury in reaching its verdict. With this precedent it is difficult to see how opinion evidence of non-experts is to be excluded in future trials.