## MEEKS *v.* McBEATH

No. 40508          June 10, 1957          95 So. 2d 791

*Clayton Lewis,* Philadelphia; *Snow & Covington,* Meridian, for appellant.

506

*Sanford* & *Alford* Philadelphia; *Pierce* & *Waller*, Jackson, for appellee.

Lee, J.

Mrs. Gertrude Meeks, for herself and two daughters, being the mother and sisters, respectively of John W. Meeks, deceased, and his sole heirs at law, brought suit

against Zan McBeath and Roger Lee Welch to recover damages for the death of the decedent.

Under the pleadings, the theory of the plaintiff was that the Chrysler automobile, driven by McBeath, crossed over to the wrong lane and collided with the truck in which the decedent was riding, and that McBeath was guilty of negligence, as a matter of law. On the contrary, it was the theory of McBeath that he was suddenly faced with an emergency, not of his own making, and that he reasonably thought it was necessary to apply his brakes and turn to the left in order to avoid a collision, and that he was not guilty of any negligence. There was no plea by Welch, who was a minor.

The jury found a verdict for the defendant, and a motion for a new trial having been overruled, Mrs. Meeks appealed.

The appellant strenuously insists that she was entitled to her requested peremptory instruction, and the court erred in refusing the same. She also assigns a number of other alleged errors.

The collision of the two motor vehicles occurred on State Highway No. 492. This road runs east and west and the blacktop pavement is 20 feet wide. From the point of the collision west, there is a slight curve to the right as well as a slight descent. The decedent was riding in a 1½-ton Dodge truck, loaded with pulpwood, which was being driven by J. T. Cannon and was proceeding west. Roger Lee Welch, driving a Ford automobile, was traveling east. Behind the Ford, Zan McBeath, in a Chrysler automobile, was also proceeding east.

Roger Page had caught a ride with Welch in the Ford, and wished to get off at a place on the road where a house was being built. For that purpose, Welch turned to the right and stopped. The truck and Chrysler thereafter collided. All of the evidence showed that the point of impact was from 4 to 6 feet north of the yellow line, which was in the center of the road. It was slightly west

of the back end of the Ford. The truck was in its proper lane at the time. The Chrysler was out of its proper lane. and partly in the truck's lane. All of the evidence further showed that the left wheels of the Ford were from 2 to 2½ feet on the pavement on the south side, and the balance of the vehicle was off the pavement.

According to the evidence for the plaintiff, the truck was not exceeding a speed of 40 miles an hour; the Chrysler was traveling between 50 and 60 miles an hour; the Chrysler suddenly came over from the right lane into the left, struck the truck about the left front wheel, and caused it to turn over and kill Meeks; and, as a result of the collision, the Chrysler was slued around and against the Ford.

Two patrolmen made an investigation before the vehicles were moved. They found the Chrysler crosswise the road and against the Ford. Skid marks of the Chrysler commenced 25 steps west of the point of impact and continued to the place of collision. They cut across the center line 34 feet west of the point of impact.

Robert Page testified that Welch, as he approached the stopping place, had his lights blinking for a right turn, and that the lights were still blinking when he got out and walked around the car after the collision.

█ █ █ The overwhelming weight of the evidence leads inescapably to the conclusion that McBeath, because of his speed, did not stop in the distance between his car and the parked Ford; and that, instead of turning to the right, or keeping straight ahead and hitting the Ford, he chose to go to the left, perhaps thinking that he could pass between the parked Ford and the oncoming truck.

McBeath did not testify. Section 1690, Code of 1942; Cross v. Frost, 86 So. 2d 296 (Miss.). But Theo Henry, a distant cousin, riding in the Chrysler, testified that McBeath was driving 45 to 50 miles an hour; that Welch gave no signal but stopped in front of them; that Mc-

Beath put on his brakes but could not stop; that he bump-ed into the Ford and ricocheted to the other side of the road and stopped; and that the truck ran into the front of the Chrysler. He further said that he had seen the truck as it was approaching about 300 feet away; that Welch, when he stopped the Ford, was "about 30 yards ahead. 25 or 30." When he was asked "and you were 90 feet behind him when he stopped and you couldn't stop within 90 feet without running into him, could you?" He replied, "No, sir."

Thus the substance of Henry's testimony was that he did not see the Ford blinking its signal lights for a stop or right turn, but that he actually saw the Ford as it was stopping 90 feet ahead of the Chrysler; that McBeath applied his brakes, but that he could not stop; that the Chrysler bumped into the Ford and then glanced past it into the path of the truck, where instead of hitting the truck, it was hit by the truck.

Obviously Meeks was guilty of no negligence. Mis-sissippi Central Railroad Co. v. Roberts, 173 Miss. 487, 160 So. 604; Thomas v. City of Lexington, 168 Miss. 107, 150 So. 816; Greer v. Pierce, 167 Miss. 65, 147 So. 303; and other cases too numerous to mention.

There was no proof that Cannon was negligent. His speed was not excessive; and his statement was that the Chrysler came around the Ford so suddenly that he did not have time even to apply his brakes, although he did turn his front wheels to the right.

Actually the only dispute as to proximate cause was simply this: The plaintiff's evidence showed that the Chrysler cut over to the left on the wrong side of the road and ran into the truck, whereas the evidence for the defendant was that the Chrysler bumped into the Ford and glanced into the wrong lane. It is clear that, under either version, McBeath, at the speed at which he was traveling, was following too closely behind the Ford.

Section 8188 (a), Code of 1942, provides as follows: "The driver of a motor vehicle shall not follow another vehicle more closely than is reasonable and prudent, having due regard for the speed of such vehicles and the traffic upon and the condition of the highway." See also Cochran v. Peeler, 209 Miss. 394, 47 So. 2d 806; American Creosote Works v. Rose Bros., 211 Miss. 173, 51 So. 2d 220; Continental Southern Lines et al. v. Klaas, 217 Miss. 795, 65 So. 2d 575.

█ █ As to the appellee's claim that he was faced with an emergency, it must be remembered that this Court in Jones v. Dixie Greyhound Lines, Inc., 211 Miss. 34, 50 So. 2d 902, said: "The emergency rule cannot come into operation at all if the emergency was proximately caused by the fault of the driver. A condition precedent to use of this standard is that the driver 'has used due care to avoid meeting such an emergency . . .' 5 Am. Jur., Automobiles, Sec. 171, says: 'Where the situation of peril arises because of the driver's own negligence, the emergency rule cannot be invoked in his behalf.' "

In the Klaas case, supra, the passenger bus, proceeding south, was being followed by a heavily loaded cottonseed truck, driven by Howard Smithson, Jr.; and 68 feet behind the cottonseed truck was a cattle truck, being driven by Lawyer Partee. The three vehicles were traveling at 40 to 45 miles an hour. When the bus came to a stop, thus forcing the seed truck to stop, Partee applied his brakes as hard as he could, but his truck swerved over the center line into the path of the oncoming Klaas automobile. This truck and the automobile collided and Klaas was killed. Partee contended that he was confronted at the time with an emergency, and that he exercised reasonable care to avoid injury to himself and others. The opinion quoted Section 8188 (a), Code of 1942, supra. Partee had testified that he did not intend to try to pass the seed truck, but that, when he applied

his brakes, his truck leaped across the highway. The opinion pointed out that he could not invoke the sudden emergency rule because his own testimony showed that the emergency was proximately caused by his own fault, and cited Jones v. Dixie Greyhound Lines, Inc., supra. The Court said: "According to Partee's own testimony, when Smithson applied his brakes, Partee was only 68 feet behind him, and Partee had been following the seed truck at a distance of about 68 feet for at least a mile. Thus it appears from Partee's own testimony the emergency which required immediate action by Partee to avoid a collision with the seed truck was proximately caused by Partee's failure to comply with the requirements of the above mention statute (Section 8188 (a), supra). 'Where the situation of peril arises because of the driver's own negligence, the emergency rule cannot be invoked in his behalf.' 5 Am. Jur., p. 601, Automobiles, par. 171."

■■■ Under the evidence even for the defendant, McBeath was guilty of negligence proximately causing the collision and death of the decedent, and the court should have granted the requested peremptory instruction for the plaintiff.

In view of the conclusion which has been reached, it is unnecessary to deal with the other assignments of error.

This cause is therefore reversed, and judgment will be entered here for appellant on liability; and the cause is remanded for a new trial solely on the question of the amount of damages.

Reversed and judgment here for appellant on liability; and remanded for new trial on damages only.

*Roberds, P. J.,* and *Hall, Holmes,* and *Ethridge, JJ.,* concur.