962 So.2d 124 (2007)
Billy Paul KING, Appellant
v.
STATE of Mississippi, Appellee.
No. 2005-KA-02234-COA.
Court of Appeals of Mississippi.
July 31, 2007.
*125 W. Mitchell Moran, attorney for appellant.
Office of the Attorney General by John R. Henry, attorney for appellee.
EN BANC.
ROBERTS, J., for the Court.
¶ 1. On August 17, 2005, Billy King was convicted by a jury of capital murder and sentenced to life imprisonment without parole. King alleges that the trial court committed reversible error when it denied a request for recess or continuance to allow time for the sheriff to serve a subpoena on a potential witness. Finding no error, we affirm.

FACTS
¶ 2. King was indicted on December 14, 2004, for the murder of Bobby Warren by *126 and through Taylor Morado. The indictment charged that King paid Morado $4,000 and a vehicle to murder Warren.
¶ 3. The entire trial took place over three days. Jury selection began on Monday, August 14, 2005, the presentation of evidence occurred on the following day, and deliberations followed by the sentencing phase occurred on the final day. The State's chief witness was Morado. Morado testified at trial that he entered into Warren's home by kicking in the door and then shooting Warren nine times. He further testified that he was hired by King and Sara Warren, Bobby Warren's estranged wife. After Morado murdered Warren, he was paid $4,000 and given a car by King.
¶ 4. Morado testified that he needed the money to pay off a drug debt to Mike Bilskey. Morado testified that, after King paid Morado for the murder, he was taken to Bilskey by Raymond Miat. The grounds for this appeal center around these two individuals. The testimony regarding Bilskey and Miat first came out during cross-examination by King's counsel.
¶ 5. Shortly after Morado testified, the State rested its case-in-chief. The trial court then recessed for lunch. The defendant was the first witness to testify during his case-in-chief. Following his testimony, a short bench conference was held to discuss the implications of Sara Warren invoking her Fifth Amendment right not to testify. During this conference, King's counsel stated that he wanted to have Miat and Bilskey testify during his case-in-chief. King's counsel stated that they were not present, as he had just heard about them for the first time during the cross-examination of Morado. The State objected to the calling of the witnesses if it would delay the trial. The trial court held that the witnesses would be allowed to testify if they would be able to appear prior to the defense resting its case-in-chief. The court then, at the request of King's counsel, issued a subpoena instanter for both Bilskey and Miat.
¶ 6. The defense next called Sara Warren. When asked questions concerning the murder, she invoked her Fifth Amendment right not to incriminate herself. Following her testimony, the defense called Bilskey and Miat. Neither being present, the trial court required the defense to move forward. Lacking any other witnesses, the defense rested.
¶ 7. The jury returned a verdict and found King guilty of capital murder. The jury then sentenced King to life imprisonment without parole. Aggrieved, King appealed to the supreme court. The appeal was deflected to this Court for review.

STANDARD OF REVIEW
¶ 8. The decision to grant a continuance is within the discretion of the trial court. Shelton v. State, 853 So.2d 1171, 1181(¶ 35) (Miss.2003) (citing Smiley v. State, 815 So.2d 1140, 1143-44(¶ 14) (Miss. 2002)). "The appellate court will not reverse the trial court unless the ruling resulted in manifest injustice." Id.

ANALYSIS
¶ 9. King alleges that the trial court committed reversible error when it denied a request for recess or continuance to allow time for the sheriff to serve a subpoena on a potential witness. He claims that the trial court abused its discretion when the judge required the trial to move forward, while two witnesses of which the defense had just learned were unavailable to testify. King's counsel stated that he had just learned about the two witnesses a few hours before, during the cross-examination of the State's chief witness, Morado.
¶ 10. The defense claimed that it learned about Bilskey and Miat for the *127 first time during cross-examination of Morado. As for Bilskey, we gather from the line of questioning that Morado spoke of him during his statement to police. During cross-examination, King's counsel brought out that Morado owed money to Bilskey. After eliciting that testimony, counsel asked "[a]nd is that the same person that you stated in this statement that you made, in your confession, that you made to police?" It appears from this line of questioning that King's counsel did in fact know of Bilskey prior to trial. The supreme court has repeatedly stated the proper process to ensure the attendance of witnesses. See Gates v. State, 484 So.2d 1002, 1006 (Miss.1986) (quoting King v. State, 251 Miss. 161, 168 So.2d 637 (1964)). King's counsel should have issued a summons when he received Morado's statement to the police, referencing Bilskey. As to Bilskey, we find that the trial court did not abuse its discretion in denying the continuance in order to allow his testimony at a later date. With respect to Bilskey, defense counsel did not use due diligence, when it learned of Bilskey, to assure that he would be available to testify. Further, the supreme court has held that a trial court did not abuse its discretion in denying a continuance due to an absent witness, when the defendant failed to indicate the whereabouts of the witness or show that the witness would be available in the future. Parham v. State, 229 So.2d 582, 584 (Miss.1969) (citing Ellis v. State, 198 Miss. 804, 23 So.2d 688 (1945)). Here, there is only a vague reference that Bilskey may be somewhere in St. Louis, Missouri.
¶ 11. As to Miat, the same result is reached. A defendant is entitled to compulsory process of those witnesses favorable to his case as guaranteed by Article 3, Section 26 of the Mississippi Constitution and the Sixth Amendment to the United States Constitution. However, this right is not absolute and "may require a showing of some colorable need for persons to be summoned." Hentz v. State, 542 So.2d 914, 915-16 (Miss.1989). Indeed, the defendant must show that the proposed witness' testimony would have been relevant, material, and vital. Id. Additionally, a showing of some degree of due diligence is required when claiming the trial court erred in denying a defendant's motion for a continuance for absence of a witness. Wilson v. State, 716 So.2d 1096(¶ 20) (Miss.1998). Specifically, a motion for new trial raising this issue as error must contain either an affidavit of the absent witness detailing what his testimony would have been, or a showing of the impracticability of obtaining the affidavit despite diligent attempts. Id.. (citing Thigpen v. State, 206 Miss. 87, 93, 39 So.2d 768, 769 (1949)); see also Smiley v. State, 815 So.2d 1140(¶ 15) (Miss.2002). Additionally, in Cleveland v. State, 820 So.2d 37(¶ 11) (Miss.Ct.App.2002), this Court held that the trial court did not err in denying Cleveland's motion for a continuance to allow time for an absent witness, Raymond Murrell, to be found as, on appeal, there was no showing that "it was impossible or impracticable to secure the attendance of the witness or to secure his affidavit." In affirming the lower court we stated, "[o]ther than the mere assertions made during the trial by counsel for Cleveland regarding Murrell's testimony, there is no substantial proof that what Murrell would have said would have aided Cleveland." Id.
¶ 12. In Rogers v. State, 891 So.2d 268(¶ 28) (Miss.Ct.App.2004) this Court held that the trial court's denial of a defendant's motion for a continuance to acquire the attendance of newly discovered witnesses was not error. Rogers was convicted in the Circuit Court of Madison County for the sale of cocaine. Id. at (¶ 1). On *128 appeal he argued that the State disclosed a video depicting the drug sale to him prior to trial, but failed to show him a second video played for the jury in which, according to Rogers, different individuals were present from the first video. Id. at (¶ 23). He requested a continuance in order to contact these individuals and have them testify on his behalf. Id. at (¶ 25). The trial court inquired on who these individuals were and issued subpoenas instanter for the persons identified by Rogers. Id. at (¶ 26). However, the trial court denied his motion for a continuance. Id. In affirming the trial court's ruling, we noted that the court assisted Rogers by issuing subpoenas for the requested witnesses, but held that without any indication that they had personal knowledge on the guilt or innocence of Rogers we could not say the judge erred. Id. at (¶ 28).
¶ 13. King's attorney supposedly learned of Miat for the first time during cross-examination of Morado. Without any indication in the record for a basis for his belief, King's attorney stated, "I feel like that [Bilskey or Miat] would seriously impeach Mr. Morado's testimony, and attack the credibility of the whole story, and that the jury is entitled to hear this." In furtherance of King's right of compulsory process, the trial court immediately issued a subpoena instanter, but Miat did not show. There is no indication in the record that King made any further attempt to contact Miat post-trial. This is evident in his motion for a new trial in which he claims that Miat's "testimony would have impeached the States [sic] witness," but gives no indication what that testimony would be, or just how it would have impeached the State's witness.
¶ 14. On appeal, King does not argue that Miat would have any knowledge of his guilt or innocence in the planning and culmination of Warren's murder. He does not argue that Miat could shed new light as to discussions Morado claimed he had with King concerning the assassination, to Morado's claim that he was paid $4,000 given and a vehicle by King for his services, or any substantive issue in the case. He only argues that Miat might have information that would contradict Morado's testimony that Miat drove him to Bilskey's house. However, as was the case in Rogers and Cleveland, King has shown neither a colorable need for the presence of Miat through Miat's proposed testimony by affidavit, nor that it was impossible or impracticable to secure Miat's affidavit. Therefore, "[w]e cannot reverse [the trial court] because we have no idea what [Miat] would have said in aid of [King]," and as such, there has been no showing that the trial court's actions resulted in a manifest injustice. Wilson, 716 So.2d at (¶ 21). We affirm.
¶ 15. THE JUDGMENT OF THE NEWTON COUNTY CIRCUIT COURT OF CONVICTION OF CAPITAL MURDER AND SENTENCE OF LIFE WITHOUT PAROLE IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
KING, C.J., LEE AND MYERS, P.JJ., IRVING, CHANDLER, GRIFFIS, BARNES, ISHEE AND CARLTON, JJ., CONCUR.